Macklot vs. Dubreuil.

---

JOHN N. MACKLOT vs. LOUIS DUBREUIL.

| 9 | 477 |
| 97 | 536 |
| 9 | 477 |
| 107 | 131 |

1. A vendee may dispute the title of his vendor in an action of ejectment. His possession is adverse to that of his vendor, and he may set up the stat. of limitations, in bar of an action founded on his vendor's title.

2. What constitutes adverse possession is a question of law—the facts to establish that possession are however to be found by the jury.

3. The certificate of the Recorder of Land Titles, is *prima facie* evidence of title, and dispenses with the necessity of proof of the facts upon which the Recorder was required to issue his certificate.

4. A person whose only title is naked possession, cannot defend against the certificate by showing that the facts upon which the Register issued the certificate did not exist—or that the requisites of the statute were not complied with.
Scott, J. dissenting on this point.

APPEAL from St. Louis Circuit Court.

Spalding and Tiffany, for Appellant.

Macklot vs. Dubreuil.

POINTS AND AUTHORITIES,

1. The certificate of the Recorder of Land Titles, dated 18th August, 1842, was improperly admitted in evidence, 3 Story's Laws U. States, 1972, act for procuring cultivation, &c., before Recorder D. C. The land in question was not a "lot" in the meaning of act of 13th June, 1812, and was not therefore confirmed by that act; and the Recorder had no jurisdiction of it.

2. The admission in evidence of the testimony taken before Hunt, the recorder, is objectionable for the same reasons.

3. The second instruction asked by defendant below as to the limitation of 20 years, should have been given. *First*, That portion of it relating to the half belonging to the heirs of Dubreuil is correct, for the land was deeded to her husband during the marriage, and by the Spanish law, the wife being the survivor owned the half, *Recopilacian de layes de Espana*, vol. 3d, page 425, Lib. 10, Tit. IV. Laws 1, 2, 3, 4 and 5 ; 9 Mart. Rep. 217, (O. S)· 3 Mart. Rep. 97, (O. S.) as to presumptions. *Second*, The deed to the husband Louis Dubreuil, is dated 22 Nov'r, 1790, and the daughter was married in 1797, showing as the rest of the record also does, that they were married long before that conveyance. *Third*, That portion of the instruction as to the children, should have also been given. 1 Edwards' Com. 598, limitation of 20 years ; Rev. Code of 1825, p. 510, 511 ; Rev. Code, p. 392, page 396, sec. 11, 2 Stark. Ev. 506,-'7, '8. *Fourth*, Defendant held adversely and denied the right of the heirs of Dubreuil, so that the act would bar even if he were owner jointly with them. 1 Lord Raymond, 310, 311, 312 ; 5 Burr Rep. 2604 ; 1 Cowper, 217. Long possession by one tenant in common, held proof of ouster, and a denial of title is *ouster ;* 13 John. Rep. 406. A grantee of an undivided ninth who purchased the whole, and entered claiming the whole, holds adversely and is protected by the statute against the other tenants in common. 3. J. R. 116 ; defendant not protected because he entered under one tenant in common, and therefore possession not adverse. 5 Cowan 530 ; where tenant in common enters adversely, claiming in severalty, the statute of limitations runs in his favor against his co-tenants. 4 Paige 178, to same effect ; 9 John. Rep. 102. Question of adverse possession is certainly for the jury, 9 Cowen 530, Clopp vs. Browagen ; though such questions sometimes involves questions of law which the court should decide, submitting the questions of fact to the jury with its instructions, 5 Peters' Rep. 402 ; 1 Cowen 276, 605; 8 Wend. 440; 1 Littell 260; 2 Peters 212; show that

possession of part claiming the whole under paper title is sufficient adverse possession of the whole, for statute of limitations to run.

4. The court erred in giving the instruction asked on behalf of the plaintiff below.

*First*, because the instruction is ambiguous.   It asserts that if the jury believe the facts set forth in the instruction, that the defendant could not dispute the title of Louis Dubreuil.   But *Louis Dubreuil* is the plaintiff; and if he be meant by the instruction, the instruction itself is erroneous, as it excludes from the consideration of the jury the derivative title of the plaintiff.   *Second*, And the doctrine of the instruction is wrong; 3 Hill's Rep. 516.   A grantee in fee may deny that the grantor had any title; 7 Wheat. Rep. 535;  (5 Cond. Rep. 335;) 16 Peters' Rep. 25, at pages 53, 54; 2 Marshall's Rep. 27, 28; 4 Littell's Rep. 27 ; 2 Metcalf Rep. 32.   These cases show that the vendee is not estopped from denying the title of his vendor, as he holds adversely to him as well as to the rest of the world.

H. R. GAMBLE, for Appellee.

POINTS AND AUTHORITIES.

1. As to the admission of the certificate of confirmation.

The plaintiff is entitled to give in evidence, in the opening of his case, any title document issuing from any office of the government in the forms of law, unless upon its own face, it appears to be void, as being not within the scope of the officer's powers.

It is only after the defendant has shewn that he claims title and is not a mere trespasser, that he can call in question the regularity of the acts of the officer who gave the document; Hunter vs. Hemphill, 6 Mo. Rep. 106.

The question then for the court is the legal effect of the document after the evidence has been given, and this is to be determined on instructions asked by the party, and is necessarily subsequent to the admission of the document in evidence.   So far then as the admissibility of the certificate of confirmation is to be decided upon the facts as they were before the court, when it was offered, there can be no doubt that at the time that question was raised, the court was bound to admit the paper.

If it be said as an objection to its admission, that it bears date after the suit was brought, the answer is ready and conclusive, that it is not an instrument that professes to confer title to the land, but is the evi-

dence (provided by law,) of the existence of antecedent facts upon which the title rests.

2. As to the admission of the evidence taken by the recorder of land titles, offered for the purpose of shewing that that officer took proof of the possession of the property, under the act of 26th May, 182., as the basis of the certificate of confirmation, it seems to me that there could be no reasonable objection to the evidence offered, seeing that it was merely a part of the action of the government on the claims, and was admissible on the same principles that required the admission of the certificate of confirmation. I mean of course to confine the question here, as it was confined in the court below, to the admissibility of the paper for the purpose for which it was offered.

3. The instructions asked by plaintiff's counsel and given by the court, was the law which ought to govern the case, and which cuts off all dispute in relation to the title or evidence of title under Sylvester Sarpy. A person entering into the possession of land, claiming under A, cannot dispute the title of A, in a suit brought by B, who also claims under A, nor can he set up an outstanding title in another person as a defence; 10 John. Rep. 292, Bonne vs. Hinman ; 7 John. Rep. 157 ; 1 Caine's R. 444; 6 John. R. 34. In this view of the law it is wholly immaterial whether the property was an "out-lot," or a tract of land unconnected with the town, and whether the recorder had power to give a certificate of confirmation or not, and whether in fact there ever was any title in Sylvester Sarpy or not. The possession being obtained under the title of Sarpy, whatever that title may be, must be restored to those in whom that title is vested.

4. The second instruction asked by defendant, and upon the refusal of which the greatest stress is laid, was properly refused.

It assumes as a fact *to be decided by the court*, that the marriage between Louis Dubreuil and Susanna, his wife, took place before the conveyance from Sylvester Sarpy to Dubreuil, and that consequently the property entered into the community which the law establishes when no marriage contract is made.

If the conveyance were made before the marriage, the property would not enter into the community unless bought in by marriage contract, because the community established by law, in the absence of any express contract between the parties, only embraces subsequent acquisitions.

Although the evidence may be strong that the marriage was anterior to the conveyance, yet the question of fact is not to be decided by the court, because the evidence is strong.

Macklot vs. Dubreuil.

Again, the instruction was correctly refused, because it referred a question of law to the jury.

The court was asked to instruct the jury, "that if they believed that Daujin, and those claiming under him, had possessed the land adversely to the plaintiff, they should find," &c.

What constitutes an adverse possession, is a question of law; 5 Peters 438. The cases are very numerous in which the courts declare what is necessary in law, to constitute an adverse possession; 1 John. Rep. 158; 16 John. R. 301; 3 John. Case 124; 6 Mass. R. 229; 7 Mass. R. 381. These are only a small number of the cases which might be cited, in which the courts decide as a matter of law, what was a disseisin or actual ouster, or adverse possession.

Angell in his treatise on limitations says: "The only rule which can be laid down is, that to constitute a disseisin or adverse holding, there must be an actual and exclusive occupation of the land, accompanied by such circumstances, and attended by such acts, as will amount to a claim to hold it against him who was seized." Angell 81.

I am not discussing what an adverse possession is, but showing that whether certain acts amount to an adverse holding, is a question of law for the court, and is not for the jury. Accordingly the court in examining the authorities referred to by the appellant, will see that in those cases the courts decided what will constitute an adverse possession between tenants in common, and that other facts are required by law to constitute an adverse possession between such tenants than are necessary in other cases.

When adverse possession is relied upon, certain facts are to be ascertained; as, how the possession commenced; what was the purpose of the party taking possession; what were the relations of the parties; what was the intent and evidence of the possession.

In relation to such facts the jury must decide, but the court is to tell the jury what is an available adverse possession.

To illustrate this position: take the case of two tenants in common of a house and lot in town; one enters and uses the whole premises himself without saying or doing any more. This is not in itself an adverse possession; but if he actually ousts his co-tenant, and claims the whole, or does other acts equivalent to an ouster, this it is said will be the beginning of adverse possession. In both cases he has the actual possession of the whole.

To leave to the jury the decision whether there was an adverse possession, without telling them in what it must consist, would be to leave to them a mere question of law.

The case referred to by the appellant, in 9 John. R. 102, is a case in which the court took to itself the question of fact, and decided it, and has no application to the case now before the court.

5. The first and third instructions asked by appellant and refused, are embraced in the suggestions here made on the instructions asked and given for plaintiff.


NAPTON, J., delivered the opinion of the court.

This was an action of ejectment brought by Dubreuil to recover the undivided moiety of a tract or lot of ground lying in St. Louis county. The suit was commenced on the 26th January, 1839. The plaintiff below obtained a verdict, and judgment was rendered thereon in 1844.

The plaintiff derived his title from the heirs of Louis Dubreuil. In 1785 a concession of the land in dispute was made by Cruzat, the Lieutenant Governor of Upper Louisiana, to Sylvester Sarpy, and in 1790 Sarpy conveyed the land by deed to Louis Dubreuil. Dubreuil died before the change of government, and in 1808 his widow, Susanna Dubreuil, presented her claim before the Board of Commissioners for confirmation, under the 2nd section of the act of Congress of March 3, 1807. The claim was for "four arpens front on the Mississippi, back to the road leading to Prairie Catalan, otherwise Carondelet, and from six to eight arpens in depth." The Board ordered a survey, and in 1812 again considered the claim, but declined confirming it on the ground that there had not been a survey, and the contents of the lot had not been ascertained. In 1818 the tract was surveyed by virtue of a communication from Frederick Bates, Recorder of Land Titles, to William Rector, Surveyor General, which communication included this tract among a list of claims, as to which the general principle of right had been settled by the Board of Commissioners, but not finally confirmed for want of ascertainment of boundaries. In 1824 Theodore Hunt, Recorder of Land Titles, took under consideration the claim, as one which had been confirmed by the act of 13th June, 1812, and received proof as to cultivation, inhabitation and possession, but issued no certificate. In August, 1842, Frederick Conway, then Recorder of Land Titles, issued a certificate which was given in evidence by the plaintiff on the trial. This certificate purported to be issued under the 3d section of the act of March 26, 1824; and it is certified that by virtue of the first section of the act of 13th June, 1812, Sylvester Sarpy's legal representatives were confirmed in their claim to a lot or tract of

land containing 32 arpens, (describing it) the same having been regularly surveyed in the name of Susanna Dubreuil under said Sarpy. Accompanying this certificate was a plat returned by the surveyor general, and certified by him on the 17th August, 1842. In this certificate the surveyor general says: "This claim is embraced in the registry of confirmations furnished this office by the recorder of land titles, under the provisions of an act of congress of May 26, 1824."

In 1838 proceedings were had for a partition of the land among the heirs of Louis Dubreuil and Susannah Sainton Dubreuil his wife, which resulted in a sale and a purchase by the plaintiff (Louis Dubreuil, the younger) and Louis A. Labeaume.

It appeared in evidence that Louis Dubreuil, the elder, resided on the land in dispute until his death, and his widow occupied it afterwards: that one Daujin bought the land of Madame Dubreuil, and occupied it and claimed it as his own. A witness introduced by the plaintiff, testified that he was told by Antoine Dubreuil, a son of Louis and Susanna Dubreuil, that his mother told him not to molest Mr. Daujin, that she had sold him said land, and had been well paid for it. A witness for the defendant testified, that both Daujin and Madame Dubreuil had told him that Daujin had purchased the land of the said Madame Dubreuil. It was also proved that Daujin claimed the land as his own under the said purchase, and occupied it from about the year 1814 or '15 until his death, when it was sold by his administrator and bought by Louis Menard, who leased it to the plaintiff in error.

Evidence was introduced by the defendant Macklot to show the situation of this tract of land. It lies between the east line of the commons of St. Louis and the river; the said eastern line of the commons cutting off a small corner from the western end of the tract, and is about two miles south of Mill creek, a stream running along the southern part of the old town of St. Louis. There are several tracts lying on the river east of the commons, between the tract in dispute and the old town. The late surveyor general (Milburn) was examined, and gave it as his opinion, that an out boundary line, such as is contemplated by the act of congress of 13th June, 1812, and the act supplementary thereto, could be run so as to embrace every thing required by those acts, and leave out the land in controversy, except so much of it as falls within the St. Louis commons.

The circuit court instructed the jury at the instance of the plaintiff, as follows: "If the jury find from the evidence that the defendant Macklot entered into possession of the land in controversy as the tenant of Menard, and that Menard entered into possession under the claim of

title from Antoine Daujin, and that Antoine Daujin entered into possession under Susanna Dubreuil, and that Susanna Dubreuil claims the land under the deed given in evidence by the plaintiff from Sylvester Sarpy to Louis Dubreuil, the said defendant cannot dispute the title of Louis Dubreuil."

Several instructions were asked by the defendant, the object of which was to let the jury inquire into the fact, whether the land in dispute was an out lot of St. Louis or not, and also to let in the defence of adverse possession under the statute of limitations. These instructions were refused.

The record presents the single question, whether under the facts of this case, the defendant had a right to dispute the plaintiff's title either by impeaching the validity of the recorder's certificate, or by setting up an adverse possession as a bar under the statute of limitations? In the argument of this question, the proposition contained in the instruction of the circuit court of St. Louis is defended upon two grounds: First, upon the principle of estoppel, and, secondly, upon the ground that the defendant could not, on his naked possession, be permitted to call in question the acts of the recorder of land titles.

The doctrine of estoppel was originally applied to the relation of landlord and tenant, and it has been very properly extended to all cases where a party has obtained possession of land, upon an understanding, express or implied, that he will at some time, or upon some contingency, surrender the possession. Motives of public policy have also excluded a defendant, against whom there has been a judgment and execution, from defeating the purchaser's recovery of possession, by setting up an outstanding title. Jackson v. Bush, 10 John R. 223; Jackson v. Hinman, 16; Ib. 292. So where there has been a sale but no conveyance, the party taking possession under a bond for title, cannot set up an outstanding title to defeat the vendor; 2 Marsh. 242.

The relation of vendor and vendee is different. The latter owes no fealty to the former, nor is there any principle of public policy which should prevent the vendee from strengthening his title. He holds adversely to the vendor as well as all the world.

The case of Blight's lessee v. Rochester, (7 Whea. 535,) is a leading case on this subject. The facts of that case were very similar, in many respects, to the present. James Dunlap was an alien, who came to this country subsequent to the treaty of 1783, and died before the signing of the treaty in 1794. After his death, one Hunter, professing to have purchased of John Dunlap, the brother of James, entered the land in controversy, and sold to the defendant Rochester.

Clamorgan, et al. vs. Lane.

The plaintiffs were the heirs of John Dunlap. The court held, that if the defendant claimed under a sale from Dunlap, then the plaintiffs asserted a title against this contract, unless they could show that it was conditional, and that the condition was broken, they could not, the court emphatically observed, in the very act of disregarding the contract themselves, insist that the defendants were bound in good faith to acknowledge a title which had no real existence.

Notwithstanding this case went up to the supreme court from Kentucky, the court did not regard the decisions of the courts of that State, which seemed to countenance a different doctrine, as sufficiently satisfactory and pointed, to impose upon them the duty of extending the obligations created by the relation of landlord and tenant, to that existing between vendor and vendee. This case was afterwards recognized, and its principles adopted, in the subsequent cases of Society for the propagation, &c. v. Town of Pawlet, 4 Peters, 506; Jackson ex. dem. Bradstreat v. Huntington, 5 Peters, 402; Willison v. Watkins, 3 Peters, 43; and Watkins v. Holman and others, 16 Peters, 25.

The case of Osterhaut v. Shoemaker was decided by the supreme court of New York in 1842. The language of the court in that case was very explicit, and they deny the applicability of the doctrine which prevents the tenant from disputing the title of his landlord, to a grantee in fee. The latter, as the court in the case, say, does not receive the possession under any contract express or implied, that he will ever give it up. He takes the land to hold for himself, and to dispose of at his pleasure. He owes no faith or allegiance to the grantor, and he does him no wrong when he treats him as an utter stranger to the title.

The same doctrine is held by the supreme court of Massachusetts, in the case of Barker v. Salmon, 2 Metcalf R. 32.

The supreme court of Kentucky have taken a distinction between cases where a conveyance has been made by the vendor to the vendee, and cases where there has been a sale but no conveyance. In the former class of cases they recognize the right of the vendee to dispute the title of the vendor as an adverse holder; (Voorhees v. White's heirs, 2 Marsh, 27; Winlock v. Hardy, 4 Litt. R. 274,) but where there has been no conveyance they deny the right. The case of Conelly's heirs v. Childs, is one in which the latter proposition seems to be maintained, though the report of that case is so meagre, that it cannot be ascertained upon what precise state of facts the opinion of the court was based. It would appear, however, from the statement made by the judge who delivered the opinion, that the defendants obtained posses-

31

sion from one Hays, who had given them a bond for a conveyance, but none had been executed; under these circumstances it was held, that the defendants could not avail themselves of an outstanding title in a stranger, to defeat the recovery of the plaintiff. It does not appear whether there was any obligation implied by the contract between the vendor and vendee, that the vendee should deliver up the possession in any contingency, nor whether the vendor acted in conformity with his contract in asserting his title. In Voorhees v. White's heirs, the court said, that so long as the defendant held by bond under the plaintiff, *and looked to him for a consummation of his right,* he could not controvert the plaintiff's title; but that when a deed was obtained in pursuance of such bond, the defendant could with propriety be said to hold adversely to his vendor, as well as the rest of the world, and had the same right to controvert his title as any other person. This opinion, we think, places the doctrine on a reasonable, and legal basis; and the question then resolves itself into one of adverse possession; and the question of adverse possession cannot be determined by the execution or non-execution of a conveyance. This would be a circumstance which would have its weight, but it might be outweighed by others, and the intention of the parties must be gathered from all the circumstances attending the transaction. It is obvious then, that no general rule could be laid down, governing all cases, or any class of cases, but each case must depend upon the facts proved, conducing to show the actual intent of the parties.

To apply these principles to the present case, the doctrine of the circuit court that the mere fact, that Daujin acquired possession from Madame Dubreuil precludes Daujin and those holding under him from disputing the title of Madame Dubreuil, or rather her husband's, is not sustained by the authorities. It would depend, as we think we have shown, upon the character of Daujin's possession, and of that we will speak hereafter.

Independently of the doctrine of estoppel, the defendant relies, for the exclusion of the particular defence set up in this case, upon the principle that a mere trespasser should not be allowed to question the plaintiff's title, where that title is derived from the government, and is *prima facie* good—the defendant himself not pretending to have obtained any title whatever from the government. This position was in a qualified form, taken by this court in the case of Hunter v. Hemphill, 6 Mo. R. 106, and the same principle is subsequently asserted in the case of Sarpy vs. Papin, 7 Ib. 503. The doctrine is, however, not a new one, or peculiar to this court, although it unquestionably derives

much force from the phraseology of our statute regulating the action of ejectment. It may seem to conflict with that legal truism, that the plaintiff in ejectment must recover upon the strength of his own title, and not because of the weakness of his adversary's; but this principle which has acquired the force of a maxim, will be found upon examination to be subject to such a variety of exceptions, as greatly to diminish its importance as a general principle in the action of ejectment. We have already adverted to several cases, in considering the first branch of this general proposition, in which the character of the defendant's title alone was held to preclude all investigation into that of the plaintiff. Such is the case, where the relation of landlord and tenant exists, and such is the case between vendor and vendee, where the possession of the latter is not adverse to the title of the former. A purchaser under an execution is another exception, the defendant in the execution, and those claiming under him, being prohibited, by the most obvious dictates of public policy, from showing that the title thus acquired at the sale is defeasible. So also in the case of mortgages, the mortgagor is not allowed to set up the title of a third person against his mortgagee. Doe vs. Pegge, 1 Term R. 758. The case of Knox & others vs. Jenks, 7 Mass. R. 488, presents another instance of the numerous exceptions to this general maxim, which more nearly resembles in several features the case now under consideration. There, the court held, that where land was sold by an administrator duly authorized to sell, strangers to the title, those having no estate or privity of estate or interest affected by the sale in question, should not be permitted to set up the title of the heirs, or call on the executor or administrator for strict proof of the regularity of his proceedings. The provisions of the law affecting such sales, were thought to be designed for the protection of persons connected with the estate conveyed, and such persons and those claiming under them, were therefore allowed to see that every essential requisite of the law should be complied with. But strangers to the title were not considered as entitled to any such privilege. The case of Hunter vs. Hemphill asserts the same principle, and nothing more. It was conceded in that case, that the defendant might show that the paper title of the plaintiff was a mere nullity, because issued by an officer not authorized by law, or because of the reservation of the land from sale. But where the defendant claims no title himself under the United States, the courts will not indulge him in looking very critically into the plaintiff's title, with a view to show that irregularities have been committed by the officers to whom the government has entrusted the power of selling their lands.

When the case of Janis' administrator vs. Gurno, was first before the court, (4 M. R. 458,) Judge McGirk said, "The act of Assembly provides that the action of ejectment may be maintained upon a confirmation made under the laws of the United States, against one in possession, who has not a better title thereto. What shall be considered a better title, the act does not define. It surely does not mean that the bare possession of the defendant shall be so considered. We understand then, that the meaning of the act is, that when the plaintiff produces a confirmation of the land to himself, he has made out his case, and will be entitled to recover, unless the defendant can show a better title. What in all cases, or indeed in any given case, would be a better title, need not now be decided."

When this case was up a second time, the defendant showed that the lot in controversy was confirmed by the act of 1812, to the heirs of one Toussant Lebeau, and deduced title from a portion of these heirs. The defence was admitted and sustained. The court observed, that the common law doctrine, which allowed the defendant to prove an outstanding title in a third person, was not repealed by our statute, because, (as they say,) where the plaintiff shows no right of recovery, it is clear he has no right to eject the defendant from his possession, he being entitled to that possession against all the world except the right owner.

This is true, and the idea that a plaintiff who has no title whatever, or who produces a void patent, or a void confirmation, can recover the possession from a mere trespasser, finds no support in any thing advanced by this court in the case of Hunter vs. Hemphill. But it does not follow that therefore a mere superior outstanding title in a third person, with whom the defendant has no privity, can be given in evidence in an ejectment to defeat a *subsisting* possessory title in the plaintiff which is superior to that of defendant.

The case put by Judge McGirk, in illustration of the general doctrine of setting up an outstanding title, is a case which the plaintiff has no title, the patent under which he holds being absolutely void. "Suppose a plaintiff on the trial," says the Judge, "in any case proves his title by a patent of any given date, and then the defendant will show, that one or ten years before the plaintiff's right accrued, a patent was made to a third person for the same land. In such a case, it is quite clear that the defendant has no right to the property, but it is equally clear that the plaintiff has no right to recover, because he has no title." Such also would be the case, if the plaintiff has disposed of his title.

The plaintiff must show a *subsisting* title, and a title at least *prima facie valid.*

By the act of 1824, the recorder of land titles was authorized to investigate the titles of claimants to village lots, out-lots, &c. in St. Louis and other enumerated villages, and when satisfactory proof was made to him of the occupancy, cultivation, &c., required by the act, he was directed to issue a certificate of confirmation to the proprietor. Whether the certificates should have been regarded of any value, in case of a disputed title, after the court had decided that the act of 1812, *proprio vigore* confirmed the lots, is no longer a debateable question. It has been repeatedly decided that they are prima facie evidence of title, and shall prevail against any one not having a better title.

Is the bare possession a better title? If not, upon what principle shall the mere trespasser be permitted to require the holder of the register's certificate, to prove his possession, cultivation, &c? For it is obvious, that if this be permitted, the holder of the certificate may in every instance be required to make the same proof which he should have made to the recorder. Of what avail then is the certificate? How can it be said to be prima facie evidence? How can it prevail against a person not having a better title? Bare possession is the lowest order of title; and if the certificate of itself will not prevail against the naked occupant, it is of no value. The holder of the certificate must in every instance prove up his possession, cultivation, and inhabitation prior to the 10th March, 1804, and the certificate is no better than waste paper, for by making such proof, he makes out his title under the act of 1812, without the aid of any certificate. To give any operation then to our statute regulating the action of ejectment, which declares that a confirmation by the recorder of land titles, is sufficient to maintain the action against any person, not having a better title, it must follow that the defendant who has no title other than that which mere possession gives, cannot defend against the holder of a certificate of confirmation, by showing that the inhabitation, cultivation, &c., required by the act of 1812, did not exist, and that the recorder erred in declaring that they did exist, in issuing his certificate of confirmation.

If it be conceded that a defendant shall not be allowed to go behind the certificate, with a view to show that the inhabitation and cultivation prior to 1804, required by the act of 1812, did not exist, and that the requisites of the statute in this respect were not complied with, upon what principle will he be permitted to show that the lot confirmed does not come within the terms of the grant, as being neither a town or village lot, or out-lot, or common field lot? Both questions were alike

referred by the act of 1824, to the judgment of the recorder. That officer passed upon both, when he issued his certiffcate. The one requisite is as essential to the validity of the grant as the other. If the lot confirmed had not in fact been cultivated and possessed prior to the 10th March, 1804, the recorder had no authority for issuing his certificate; or if the requisite cultivation and possession were proved, but the lot was not appendant to the village, the claimant had no right to a certificate. When the certificate has issued, it is prima facie evidence that these facts did not exist, and neither the one or the other can be questioned by a party who has only that title, which more possession gives.

We think therefore that the circuit court was correct in excluding from the consideration of the jury all evidence introduced for the purpose of showing that the tract of land in controversy was not an outlot of the town of St. Louis, not upon the principle of estoppel, but because the defendant had that character of title, which did not authorize him to go behind the certificate of the recorder.

Adverse possession under the statute of limitations was unquestionably a bar to the plaintiff's right of action, if proved to the satisfaction of the jury. The proof was that Daujin and his representatives had had possession for upwards of twenty years. Where one is in possession of land, holding for himself, to the exclusion of all others, the possession so held is adverse, whatever relation in point of interest or privity he may sustain towards others. Whether a party in possession holds that possession for himself or for another, is a question depending upon evidence to be determined by the jury.

We are unable to see the necessity of determining the rights of Madame Dubreuil and her children. If a tenancy in common was created by the death of Louis Dubreuil the elder, so that Madame Dubreuil was the owner of one half, and her children of the other half of the land in controversy, it seems to be well settled that a grantee of one tenant in common for the whole land, entering on such conveyance, may set up the statute against his cotenants in common. The *quo animo* with which the disseisin is effected, is the only enquiry. And though ouster is the customary proof to sustain a disseisin by one tenant in common of another, it is not the only evidence; for in the case of Pawlet vs. Clark, (4 Peters R. 504) the court intimated that a possession may be adverse where an ouster may be presumed; and in Blight's lessee vs. Rochester, the possession was held adverse, where any presumption of ouster was repelled by the very circumstances of the case. In Bradstreat vs. Huntington, the court declared that ad-

verse possession, when it actually exists, may be set up against any title whatever, either to make out a title under the act of limitations, or to show the nullity of a conveyance executed by one out of possession.

As to an entry under a void title, if it be supposed that the sale from Mrs. Dubreuil to Daujin was a nullity, it must be observed that the bar of the statute originates in wrong.

The question of adverse possession should then, we think, have been left to the jury. It is the province of the court to tell the jury what constitutes an adverse possession, and the jury must determine from the evidence whether such facts exist, as in the opinion of the court, constitute such adverse possession. The instruction asked upon this point in the circuit court has been objected to, and the objections are probably such as may well have justified the circuit court in declining to give it in that form. The merits of the controversy, however, as we think, depend upon the question of adverse possession, and as that question was never submitted to the jury, the judgment will be reversed and the cause remanded.

Judge McBRIBE concurring.

SCOTT, Judge.

The majority of the court in the case of Hunter vs. Hemphill, expressly hold that a person in possession may show that the title of a plaintiff who seeks to dispossess him is void. The act of 26th May, 1824, authorized the recorder to inquire into the fact of inhabitation, cultivation or possession, and the boundaries and extent of each claim. Whether a lot was a village lot or not, was a question not submitted to his determination, and his certificate is no evidence of that fact. If he confirmed a lot or parcel of land not belonging to one of the enumerated towns or villages, his act was void, and the case of Hunter vs. Hemphill, is an authority to show, that a party standing on his naked possession may establish the nullity of the act by which an attempt is made to dispossess him : *ex nihil, nihil fit*, is as true in law as it is in physics. Suppose the recorder had issued a certificate of confirmation for a lot forty miles west of St. Louis, would any one maintain that his act was valid ? If it is void in that case, would it not be equally void if it is one hundred yards beyond the limits of the town?

"Why hold the word of promise to the ear, and break it to the hope?" Why hold that the nullity of an act may furnish a protection against consequences, and at the same time maintain that nothing will avoid it ?

I hold that in all actions of ejectment, the plaintiff must recover on the strength of his own title, and not on the weakness of his adversary's, and that a defendant in ejectment, may set up an outstanding title in a third person in all cases, except he is a tenant defending against his landlord, or has gone into possession under a contract for a purchase, or is in, under a defendant, whose land has been sold under execution, or such like cases. The judgment must, in my opinion, be reversed.