BLAIR, GUARDIAN OF THE HEIRS OF MAGENIS, Plaintiff in Error, *vs.* SMITH, Defendant in Error.

1. The acceptance of a deed is not such a recognition of the title of the vendor, as to estop the vendee from availing himself of a possession adverse to that title, under the statute of limitations.

2. Adverse possession for twenty years confers upon the possessor an absolute title against all persons not excepted by our statute of limitations.

3. Where the owners of contiguous lots mutually establish a boundary line and build up to it, and use and occupy according to it, for a period long enough to show their agreement and acquiescence, although less than the period which would be a bar under the statute of limitations, they, and those claiming under them, will be estopped from afterwards claiming a different boundary.    *Taylor & Mason* v. *Zepp,* 14 Mo. affirmed.

4. This principle is not in contravention of the statute of frauds.

*Error to St. Louis Circuit Court.*

This was ejectment for a small strip of ground fronting on Front street, in St. Louis, described in the petition as being two feet seven inches in width on Front street, against Smith, a tenant of John H. Gay, brought in November, 1849. The answer sets up the statute of limitations and also, that the division line had been agreed upon and possession had according to it, for a long time, by the owners of the contiguous lots, and that the plaintiffs were bound by such agreement, possession, acquiescence, &c.

The facts appeared on the trial to be, that Gay acquired by deed from Sarpy, and others, on the 18th of April, 1828, a lot of ground at the corner of Chesnut and Front streets, bounded south by Chesnut street. Gay immediately entered into possession, and commenced building a warehouse in the fall of 1828, which was finished in the summer of 1829, and was built on what he claimed to be the north line of his lot, which said lot was bounded north by the lot of A. L. Magenis. Gay held possession of the same up to the great fire of 1849, when said warehouse (stone warehouse,) was consumed, and the same lot was leased to Smith, who commenced moving the old walls of said warehouse and rebuilding on the same lines and covering the same ground occupied by the north wall of said warehouse. At the time of the purchase from Sarpy and others by Gay, there was, along the north boundary of their lot, a vacant space used as a private alley, and he, Gay, was informed by Sarpy that the same belonged to the owners of the lots on each side, and was at their disposal; and upon this information, said warehouse was built, so as to take in half of said private alley. After said warehouse was built, Magenis laid claim to seven feet of the land, and in August, 1830, Gay purchased from Magenis, for $700, his right, and took a warranty deed of that date for seven feet, described in the deed as containing seven feet English measure in front, by eighty feet same measure in depth, be the same more or

less, &c., bounded east by Water street, south by lot of Gay, north by lot of Magenis, and west by alley.

In 1832, said Magenis, the ancestor of the plaintiffs, built a warehouse on his lot and used the north wall of Gay for the south wall of his warehouse, and paid Gay therefor the sum of one hundred dollars. Magenis resided in St. Louis during all these transactions, till his death, in 1848, and during all that time, Gay held the uninterrupted and peaceable possession of his said warehouse and lot, claiming the same; and such possession was continued till the commencement of the suit.

The land claimed is twenty-three inches, being the difference between thirty-one feet French, and thirty-one feet English measure. Magenis also occupied his building all that time.

The court gave and refused instructions based upon the principles that the statute of limitations was a bar to the action, and, *secondly*, that if the owners of the adjacent lots agreed upon a division and boundary line, separating the two lots, and built respectively upon said line, and occupied accordingly, from thence down to Magenis' death, in 1848, each up to his line, then, that the parties are bound by said line, and all claiming under them; and, *thirdly*, that the acceptance of the deed of Magenis, by Gay, in 1832, does not estop Gay from setting up a previous possession against Magenis and his representatives, under the statute of limitations.

The court, sitting as a jury, found a verdict for defendant.

*M. & F. P. Blair*, for plaintiffs in error.

1. As to limitations, the plaintiffs insist that the record shows that the possession of the defendant's lessor was not adverse, for twenty years prior to this suit.

2. As to the fixing of boundaries, the plaintiffs insist that there is no evidence whatever to show it; and especially, no acts of a character to operate as an estoppel to claim the true boundaries. 3 Hill, 219. *Taylor & Mason* v. *Zepp*, 14 Mo. Rep. *Rockwell* v. *Adams*, 16 Wendell, opinion of senator Maison.

*Spalding & Shepley*, for defendant in error.

I. The adverse possession of Gay and those holding under him, is an effectual bar to the plaintiffs' action. 13 Mo. Rep. 335, *Biddle* v. *Mellon*. Angell on Limitations, chap. 31, section 14–19. 1 Watts, 433. 5 Serg. & Rawl. 236. 2 Har. & J. 87. 1 Bibb, 582. 2 Bibb, 506. 4 Bibb, 100. 4 Monroe, 138. 8 Peters, 41. 9 Mo. Rep. 477.

II. Purchasing out and taking deed from Magenis, of the seven feet, is no admission of Magenis' right to the ground now under dispute, so as to prevent the defendant from setting up the bar of the statute of limitations. 12 Mo. Rep. 238, *Landes* v. *Perkins*. A person in possession, claiming title, may purchase in an outstanding title, and is not thereby deprived of the benefit of his previous adverse possession; nor is he thereby estopped from denying the validity of the title so purchased. 9 Mo. Rep. p. 477, *Macklot* v. *Dubreuil*. 11 Mo. Rep. 118, *Joeckel* v. *Easton*. 11 Mo. Rep. 149, *Page* v. *Hill*. These cases establish the doctrine that the vendee is not estopped from denying his vendor's title.

III. The plaintiffs are estopped in this case. It is a question as to boundary. They now claim between one and two feet, which their ancestor had not claimed, but which, on the contrary, had for the greater part of twenty years, been covered by Gay's stone wall, forming the north side of his warehouse, while he himself had occupied the adjacent lot up to that wall, and had purchased the right of Gay to use and build against it. The wall formed the south side of Magenis' warehouse. 6 Wend. 467. 4 Wheat. 513. 10 Wend. 104. 12 Wend. 127. 13 Wend. 536. 4 John. 202. 2 Caines, 197. 1 Binney, 215. Barr, 234. 1 Yerger, 116, 496. 1 Meigs, 63, 413. 4 Yerger, 456. 8 Yerger, 398. 4 Metcalf, 438. 9 N. H. 473. These cases sustain the principle that, if neighboring proprietors fix on a boundary line and act accordingly, and possess according to it, especially, if they get the line run by a surveyor and agree upon it, it is an estoppel, and they are both bound by it, and possession, according to a line, is evidence of an agreement establishing it.

The case of *Taylor & Mason* v. *Zepp & Zepp*, decided at the last March term, is exactly in point.

RYLAND, Judge, delivered the opinion of the court.

From the above statement, it will be seen, that this case comes fully within the principles and rules settled by this court in the case of *Taylor & Mason* v. *Zepp & Zepp*, 14 Mo. Rep. 482.

Here were proprietors of contiguous lots. One built a warehouse in 1828 and '29, more than twenty years before this suit was commenced. After putting up the warehouse, the other proprietor claimed that the warehouse had been built upon his ground. It seems that there was a private alley between the lot purchased by Gay of Sarpy and others, and the lot of Magenis. This alley, Gay was informed, was for the benefit of, and belonged to the owners of these two lots—his lot and Magenis' lot. Gay then commenced his warehouse so as to take his part of this alley ; the north wall of the warehouse he supposed to be on his line. After the warehouse had been erected, Magenis complained that Gay had overreached on him, and that his warehouse was, in part, on his lot. Gay then bought of Magenis a strip of land on the north of Gay's lot, seven feet wide, and eighty feet in length, running from Front street back to the alley, now Commercial alley. For this strip of land, Gay paid Magenis $700, and took a deed from Magenis, with covenants of general warranty. Magenis afterwards erected a warehouse joining the warehouse of Gay, and used Gay's north wall of his warehouse in common. For the use of this wall, Magenis paid Gay $100. Gay and those under him had been in possession, from the purchase in 1828. He purchased the seven feet from Magenis in 1830. Gay remained in possession up to the big fire in 1849, when this warehouse was burned. Gay then leased the lot to Smith, the defendant, who commenced building on the site of the old wall, between Gay and Magenis. The plaintiffs are heirs of Magenis ; their ancestor resided in St. Louis,

from the time of the building of the warehouse until his death in 1848, never claimed any part of the lot from Gay, and used with Gay, in common, the wall of the warehouse as his southern boundary, and Gay used it as his northern boundary. It was supposed, at the time of the purchase by Gay from Magenis, that the wall on the north side of the warehouse was the line. The lot was sold, as having that line of boundary for Magenis' south and Gay's north line. The plaintiffs claim twenty-two inches in width, running the entire length back, being eighty feet. The plaintiffs now allege that this strip of land was never embraced in Magenis' deed to Gay, and that they were entitled to it. The suit was commenced November 2d, 1849. Gay bought the seven feet of Magenis, in August, 1830.

The plaintiffs asked the court to declare as follows : " As Gay accepted the deed from Magenis, dated August, 1830, and shows no other title, he thereby admitted Magenis' title, and had not therefore held adversely for twenty years, at the institution of this suit ; the court is therefore bound to find for the plaintiffs ;" which the court refused to give, and the plaintiffs excepted.

The defendant then asked the following instructions :

1. If Gay and Estes took possession of the ground in dispute, under claim of title, in the spring of 1828, and they and those deriving title and claiming under them have held actual and continued possession ever since, down to the commencement of this suit, adversely to all other persons, and if, when said possession commenced, Arthur L. Magenis resided in in St. Louis and continued to reside there till his death in 1848, then the plaintiffs are barred by the statute of limitations and cannot recover in this action.

2. If Arthur L. Magenis and Gay and Estes were the owners of adjoining lots of ground in St. Louis, in the year 1828, and if they, then or soon thereafter, agreed upon a division and boundary line, separating said two lots, and afterwards built

upon said line respectively and occupied said lots according to said line, from thence continually down to the time of said Magenis' death in 1848, the owner of each possessing his lot up to said division line, so agreed upon and established, the said parties and all claiming under them are bound by said line and are not permitted to dispute its correctness, in the absence of fraud.

3. The acceptance of the deed from A. L. Magenis by John H. Gay, does not estop said Gay and those claiming under him from setting up a previous possession against said Magenis and his representatives, under the statute of limitations.

These three instructions were given by the court. The plaintiffs excepted thereto. The court, sitting as a jury, found for the defendant. Motion for a new trial being overruled and exception taken, the plaintiffs bring their writ of error.

This case is fully within the principles of the above case of *Taylor & Mason* v. *Zepp & Zepp*, and we might rest satisfied by merely affirming the judgment in pursuance of that case. But we will go further and investigate these questions and settle them as far as practicable.

1. The doctrine contended for, and set forth in the plaintiffs' instruction, was properly overruled by the court below. This court has so often decided against that doctrine, that we did not expect to see it contended for again. See *Landes* v. *Perkins*, 12 Mo. Rep. 238, particularly page 258, where this court has decided, most emphatically, against this doctrine. So also, in *Macklot* v. *Dubreuil*, 9 Mo. Rep. 484. So also, in *Joeckel* v. *Easton*, 11 Mo. Rep. 124. So also, in *Page* v. *Hill*, 161, same volume.

The doctrine of the instructions for the defendant will now be noticed. The third instruction is the converse of the one asked by the plaintiff and refused. It was proper, therefore, for the court below to give this instruction. The authorities cited from the reports of decisions made by this court, fully justify the court in the ruling on this point.

2. As to the defendant's first instruction, the doctrine sought to be applied has been settled by this court. In *Biddle* v. *Mellon*, 13 Mo. Rep. 335, it was decided that adverse possession for twenty years confers upon the possessor an absolute title, against all persons not excepted within the terms of our statute of limitations. In *Macklot* v. *Dubreuil*, 9 Mo. Rep. 477, it was held by this court, that the vendee could dispute the title of his vendor, in an action of ejectment : his possession is adverse to that of his vendor, and he may set up the statute of limitations, in bar of the action founded on his vendor's title.

In *Layson* v. *Galloway*, it was held by the Court of Appeals of Kentucky, 4 Bibb, 100, that twenty years actual, adverse, uninterrupted possession will bar the action of ejectment.

In *Pederick* v. *Searle*, 5 Serg. & Rawle, 236, the Supreme Court of Pennsylvania held, that twenty-one years continued adverse possession gives a title to land, which is valid not only by way of defence, but sufficient to recover upon in ejectment.

In *Gay* v. *Moffitt*, 2 Bibb, 506, it was held, that a mere naked possession, if adverse and hostile, would bar an ejectment.

In the opinion of this court, there is no error in the court below, in declaring the law as it did in the first instruction.

3. We now come to the second instruction given by the court below, which may be considered as involving the main question in this case. This question was met and decided in the case of *Taylor & Mason* v. *Zepp*. We will, however, review this question, so as to put it to rest for the time to come in our courts.

We consider the plaintiffs estopped in this case. It is a question as to boundary. They now claim between one and two feet, which their ancestor had not claimed, but which had, on the contrary, for a greater part of twenty years, been covered by Gay's stone wall, forming the northern side of his warehouse, while he himself had occupied the adjacent lot up to that wall, and had purchased the right of Gay to use and

build against the wall. The wall formed the boundary line between the two ; it was Magenis' south boundary and Gay's north boundary. This wall, thus forming the boundary line, shall be considered, when thus used, as the agreed line between these contiguous owners and occupiers. It is competent for two such proprietors to agree to what shall be the division line ; and when using and occupying up to such a marked line as this, such use and occupancy shall be considered and deemed evidence that such line was agreed to be the division by and between the owners. The statute of frauds does not touch such a case as this. Here there is no sale of the land to either party. There is no consideration passing from one to the other ; it is not a contract either of buying or selling land from one to the other. They own adjacent lots — contiguous lots ; they agree that such a marked line shall be the dividing line between the lots which they own ; and they use and occupy the respective lots up to this line, not for twenty years, not for fifteen years, but for a length of time sufficient to show the understanding and the intention of themselves — to show that they know their own boundary, that they are content with their own boundary.

We consider this case thus : two owners of contiguous lots or tracts of land, each having his deed for his lot or tract, agree with each other, "we fix this mark on the earth's surface as the line called for in my deed — this mark as the line called for in your deed : here is the line between us. My land, mentioned in my deed, comes up to this mark, or this fence, or this wall, on this side, and your land comes to the same, on that side." They use and possess and occupy their respective lots to this mark. Now, this use and occupancy, without disturbance, for a time long enough for men to show that they know the boundary between their lands, shall be considered binding and conclusive as to such boundary, as well as of such understanding or agreement between them. They shall not, after a lapse of years, longer or shorter, as the circumstances may tend to show their agreement or settlement, or the fixing

18—VOL. XVI.

of their common boundary, be permitted afterwards to dispute it. Such boundary, thus agreed upon, shall be considered the true one ; and each one considered as the owner of the land mentioned in his deed thus marked out to that boundary between them.

4. The statute of frauds does not interfere in such a case.

The case of *Adams* v. *Rockwell*, 16 Wend. 285, was considered by this court in the case of *Taylor & Mason* v. *Zepp*, and the opinion of senator Maison therein does not meet the approbation of this court.

In the case of *Boyd* v. *Graves*, 4 Wheat. 513, the Supreme Court of the United States decided, that "The court cannot consider the agreement of the parties, although by parol, to settle the dividing line between them by a surveyor, mutually employed, as affected by the statute of frauds, as is contended by the counsel for the plaintiff. It is not a contract for the sale or conveyance of lands. It has no ingredient of such a contract. There is no *quid pro quo*, and the court do not consider it as the conveyance of title from one person to another. It was merely a submission of a matter of fact, to ascertain where the line would run on actual survey, beginning at a place admitted and acknowledged by the parties to be a boundary, where the line must begin. The possession subsequently held, and the acts of the parties evidenced by their respective sales of parcels of the land held by each, under his patent, bounding on the agreed line, amount to a full and complete recognition of it ; and, in the opinion of this court, precludes the plaintiff, after such a lapse of time, from denying it to be the dividing line between him and the defendants, and neither ought now to be permitted to disturb the possession of the other, under a pretence that the line was not correctly run."

In the case in 1 Yerger, 118, the *Heirs of Houston* v. *Matthews*, Judge Haywood, speaking of agreements about boundaries, says : " such agreement, being not a conveyance of land, but only an ascertainment of land already conveyed, need

not be by deed; and being not an agreement for the sale or conveyance of lands, is not put down in writing, or required to be in writing, by the statute of frauds. It stands independent of the law concerning modes of conveyance of lands, and the law for the prevention of frauds and perjuries; an agreement supported by the rules of the common law, as they existed anterior to the passage of either statute or act of assembly; and it is a much more satisfactory mode of settling boundary, and therefore to be encouraged, than testimony concerning the line described."

Upon this subject, a weight of authority has been cited by the counsel for the defendant, putting the question at rest, as we think.

Upon the whole of this case, then, it is our opinion that the judgment below should be affirmed, and such being the opinion of my brother Judges, it is accordingly affirmed.