THOMAS BETTS, Appellant, *v.* JOHN BROWN, Respondent.

### July 10, 1876.

1. Where a tenant of two adjoining lots, owned by different lessors, divides them, for convenience in cultivation, by a fence not on the true division line, and afterwards purchases the lot thus enlarged, his occupancy of the

ground taken from the other lot cannot be set up as an adverse possession under the statute of limitations.

2. An agreement between adjoining owners, fixing their common boundary, will be enforced by the courts, whether proved inferentially by long acquiescence, or directly by expressed understanding.

8. Testimony on both sides of an issue of fact having been heard by a jury, and the law fairly presented to them in instructions, their finding will not be disturbed.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*D. T. Jewett*, for appellant.

*Farrish & Griffin*, for respondent, cited: Taylor & Mason *v.* Zepp, 14 Mo. 448; Blair, Guardian, *v.* Smith, 16 Mo. 277.

LEWIS, J., delivered the opinion of the court.

This is an action of ejectment, involving a disputed boundary line between adjacent proprietors. The precise point of controversy may be explained by stating that defendant's possession and claim locate the northern boundary of his lot on the section line running east and west between sections 8 and 17, in township 45, of range 6, east; while the plaintiff, whose lot lies north of defendant's, claims that the true dividing line is situate about sixty feet south of the section line. The strip between these two lines is the land in controversy. Defendant obtained a verdict and judgment in the Circuit Court.

It appears that, in 1857, one Clayton was agent for the several proprietors of the two lots, and leased them both to Dennis Crowley, under whom the plaintiff claims. In the fall of that year he agreed with Crowley for the sale of the northern lot, having previously shown him the line between the two lots, as being located at the point for which plaintiff now contends. Crowley had established a fence on the same line, and caused grubbing to be done up to it, treating it as the true line between the lots, while he was tenant of both. The northern lot was conveyed to Crowley, in pursuance of his purchase through Clayton, on May

11, 1858. His occupancy, and that of the plaintiff, to the land now claimed by the latter, continued until May 4, 1868, when the defendant, having purchased the southern lot, moved the fencing northward to the section line. Both the deed to Crowley and that to the defendant described the section line as the boundary of the land conveyed.

The general character and extent of plaintiff's rights by adverse possession and limitation were fully explained to the jury, in an instruction given at his instance, so that nothing in that connection demands our review. Objection is made to an instruction which told the jury that the placing of the fence, grubbing, etc., done by plaintiff's grantor, while tenant of both lots, with no intention of claiming any part as his own, but merely in accordance with his privileges as a tenant, did not constitute an adverse possession. Plaintiff's counsel claim that there was no testimony to justify such an instruction ; that Crowley was never tenant of the southern lot until after he had purchased the northern. This is a mistake of the facts. Clayton testified, for plaintiff, that " the fence was set on the line, for the purpose of cultivating portions of the Howie (northern) lot and the Mills (southern) lot, both of which he rented, ninety-two links south of the section line. Before Crowley purchased, he rented parts of the Mills lot." Michael Crowley testified : " We moved on near Christmas, 1856. We leased the Mills and Howie tracts together." The plaintiff's error of fact being thus corrected, we find nothing suggested against the propriety of the instruction.

The testimony tended to show that, in the fall of 1867, shortly after defendant's purchase of the southern lot, he had a survey made by Julius Pitzman, to ascertain his northern boundary line. This survey located the boundary at the section line, so as to include the strip of ground in controversy. Defendant made claim accordingly, which plaintiff resisted. Defendant and another witness testified that, after several discussions of the subject, it was agreed

between the parties that plaintiff should also have the line ascertained by a survey, and the division fence should be placed midway between the two lines as located by the surveyors, each party paying for half the fence. It appeared that, in March, 1868, plaintiff caused a survey to be made by Cozzens. The latter testified: "Pitzman and myself came within fifteen or sixteen inches of each other in fixing the same section line. Betts wanted survey to establish land he purchased. I located line between Betts and Barron, on the section line." It further appeared from the testimony that, on May 4, 1868, defendant moved the division fence to a line midway between those located by the surveyors. Plaintiff, testifying, denied that any such agreement was made as stated on behalf of defendant. The court, on defendant's application, instructed as follows:

"If the jury believe from the evidence that the plaintiff and defendant agreed upon a division and boundary line separating their two parcels of land, and thereupon the defendant put a partition fence on said line, and that defendant and the plaintiff, or those under whom he claimed, have occupied said pieces or parcels of land from thence continually, the owner of each possessing his lot up to said division line so agreed upon and established, then, in the absence of fraud, they are bound by said line, and are not permitted to dispute its correctness."

This instruction is the principal matter of which plaintiff complains as error in the proceedings below. He insists that the facts in this case do not admit of the doctrine of estoppel as applied in the case of *Blair* v. *Smith*, 16 Mo. 273; that there "the parties had both built valuable buildings on the dividing line, which had stood near twenty years," etc. The argument seems to assume that an agreement upon a boundary line, between adjacent proprietors, will not bind them, unless such agreement is proved by implication from the acts of the parties during a long period, or

from costly expenditures by one or both upon the faith of it. But, while it is true that in the case cited the agreement and estoppel were established by that process, it does not follow that the same result may not be reached by a different method. Said the court: "It is competent for two such proprietors to agree to what shall be the division line ; and, when using and occupying up to such a marked line as this, such use and occupancy shall be considered and deemed evidence that such line was agreed to be the division by and between the owners." It thus appears that the agreement was the essential thing, the occupancy, etc., being merely evidence by which to prove it. Why, then, may not proof of an express agreement answer just as well? In the same opinion the court quotes approvingly from *Heirs of Houston* v. *Matthews*, 1 Yerg. 118, as follows : "Such agreement being, not a conveyance of land, but only an ascertainment of land already conveyed, need not be by deed ; and, being not an agreement for the sale or conveyance of lands, is not put down in writing, or required to be in writing by the statute of frauds. It stands independent of the law concerning modes of conveyance of lands, and the law for the prevention of frauds and perjuries ; an agreement supported by the rules of the common law, as they existed anterior to the passage of either statute or act of Assembly ; and it is a much more satisfactory mode of settling boundary, and, therefore, to be encouraged, than testimony concerning the line described."

In *Lindell* v. *McLaughlin*, 30 Mo. 28, Judge Napton, treating of the rule whereby long acquiescence would authorize a jury to find that the parties had agreed upon a dividing line, and so hold the defendants to such boundary, says : "If the plaintiffs fixed the line and the defendants acquiesced in it, how could the plaintiffs bind themselves more effectually? A positive agreement might place the defendants under stronger obligations to abide by the line, if it had been their interest to disturb it," etc.

Our Supreme Court has thus distinctly recognized the rule that an agreement between adjoining owners, fixing their common boundary, will be enforced by the courts, whether proved inferentially by long acquiescence, or directly by expressed understanding. The books are full of cases adjudicated elsewhere to the same effect.

There was testimony tending to prove such an agreement in the present case, and that the plaintiff acted upon it in causing the survey to be made by Cozzens. Such a survey would have been unnecessary, of course, if he then adhered to his claim of adverse possession to the visible line of the old fence. There was also in the testimony a denial of any such agreement. But the issue was fairly before the jury, and we are not permitted to disturb their finding. The instruction, so far as we can perceive, is in perfect harmony with the law, as we have endeavored to present it from the authorities referred to.

We find no error in the record, and must affirm the judgment. Judge GANTT concurs; Judge BAKEWELL, of counsel below, not sitting.