Taylor & Mason vs. John & Jacob Zepp.

## TAYLOR & MASON vs. JOHN & JACOB ZEPP.

To establish an estoppel *in pais* there must be  1. An admission inconsistent with the evidence proposed to be given, as the claim offered to be set up; 2. Action by the other party upon such admission; 3. An injury to him by allowing the admission to be disproved.

The doctrine of estoppel is as old as the statute of frauds, and as such a part of the law of the land.  It is no objection to others, that the one may be a modification or regulation of the other.

## ERROR to St. Louis Court of Common Pleas.

### STATEMENT OF THE CASE.

This was an action of ejectment, tried in the St. Louis court of common pleas, May 1st, 1840.  On the trial of the cause, the plaintiffs gave in evidence a patent from the United States, to Joseph Papin, for the north-west fractional quarter of section five; and the south-west detatched part of the south-west fractional quarter of section twenty-six, township forty-five, north range, seven east, in district of lands for sale at St. Louis, containing twenty-seven and wenty-nine hundredth acres, according to the official plat of the survey.   The official survey under the patent was also read, and a deed, from Joseph Papin to the plaintiffs, for the same land, described in the patent excepting what the grantor had heretofore conveyed to Isaac Walker, and what he had before conveyed to Larkin Deaver.

The plaintiffs proved by William H. Cozzens the location of the premises; and, that if thirteen and sixty-five hundredths acres were taken from the northern part of the premises, (and that should be the true construction of the deeds hereinafter mentioned) defendants were in possession of three and ninety-two hundredths acres south of a line which would embrace that quantity.   The quantity included in the patent, is, according to the survey, thirty-one and sixty-five hundredths acres.   By reference to the annexed plat it will be seen that the part shaded *pink*, or *red*, is the part which the plaintiffs claim to have been conveyed.

The defendants then gave in evidence, a deed from Joseph Papin to Larkin Deaver, of which the following is the description:

All that certain piece or parcel of land, lying and being situate in the county of St. Louis, aforesaid, with the appurtenances, and containing thirteen acres and sixty-four hundredths and a half of an acre, and being in the northern part of a tract of land, being the north-west fractional quarter of section 35, and the south-west detached part of the south-west fractional quarter of section 26, in township 45, north of range 7 east, in the district of lands offered for sale at St. Louis, Mo., containing twenty-seven and twenty-nine hundredths acres, as appears by a patent issued in favor of said Joseph Papin, No. 1148.

A deed from Larkin Deaver and wife, to Isaac Walker, describing the premises as follows:

A piece or parcel of land, &c., containing thirteen acres and sixty-four hundredths of an acre, and being the northern part of a tract of land, being the north-west fractional quarter, & c., as in last deed.   Defendants are tenants of Isaac Walker.

Jacob Smith was then called as a witness, and testified, that he was applied to by Papin and Walker, to divide the land between them—was county surveyor at the time.   At the request of both, he made a surety, and run a division line between them.   He made a return of

Taylor & Mason vs. John & Jacob Zepp.

a survey to each of them, and being shown one of his surveys, identified it, and it was read in evidence. He applied at the Surveyor General's office for information in relation to the government survey of the land, and obtained a copy of the field notes. When he made his survey, it corresponded with the original survey exactly. In making the survey he ran round the lines of the whole tract, and then divided equally between the parties, that which was east of the commons' line. Walker took possession of the part then allotted to him, according to the survey of witness. Survey was made June 16th, 1842. Witness gave to each fourteen and fifty-two and one hundredth acres. In 1845 witness made a survey for Joseph Papin, laying off his part into blocks and lots, as an addition to St. Louis. At the time of the last survey, Walker's fence was on the division line as before established. When witness made this survey for Papin, he made out for him a plat, to be filed in the recorder's office. A certified copy of the plat was produced, and the part so represented on the plat by the words "Isaac Walker," is Isaac Walker's land, according to the division line made by witness. When witness made the survey, there was a fence north of the division line seen by witness, but he could not state how far north; there had been a garden there. Said plat of Papin's addition, was duly acknowledged, and recorded in the Recorder's office; and was given in evidence by defendants; its northern boundary, being said division line run by Smith, and Walker's name appearing within on the north of said line as indicating that space to be his land. Defendants gave in evidence a deed from Joseph Papin to Isaac Walker for two lots in Papin's addition. The only part material, is the following part of the description: Bounde north by land of said Walker; west by an alley, south by a cross street, &c. The two lots conveyed by Papin to Walker were narrow stripes, lyirg along said division line, on the south of it, and separating the land, marked on the plat as Walker's, from a street, as laid down on the said plat of addition.

The court refused the following instructions asked by the plaintiffs:

1. If the jury believe from the evidence that the patent from the United States to Papin, and his deed to plaintiffs were duly executed, and that the defendants in possession of the land marked on the survey of Cozzens between the line marked as the board fence, and the line shaded red, next north of the dotted line, they will find for the plaintiffs, for the land included in said lines west of Carondelet avenue, being about two hundred feet on Carondelet avenue and extending west to the west line of the south-west detached part of the south-west fractional quarter of section 26 in township 45 as represented on the plats and surveys in evidence.

2. If the court refuse the first instruction asked by plaintiffs and give the instruction asked by the defendants: the plaintiffs then ask the following: The land described in the patent to Joseph Papin is to be equally divided between the plaintiffs' grantees of Papin, and Isaac Walker, under whom the defendants hold, and the plaintiffs upon the true construction of all the deeds are entitled to the south half of said premises.

3. The jury are instructed, that to make a parol agreement fixing a line between parties which shall control their rights, conclusive, between the parties in a case when the location under the deed is clear and unambiguous, such an arrangement must be a new, distinct and independent agreement, founded on some new or distinct consideration.

The court gave the following instructions asked by the defendants:

1. That if the jury find from the evidence that Joseph Papin and Isaac Walker, claiming title to the land patented to Joseph Papin under title papers given in evidence, agreed to make a division between them, and establish a division line between the land to be held by them, and for that purpose requested Jacob Smith, the county surveyor of St. Louis county, to make such division, and establish such line, and that he did accordingly establish, as a division line, a line which divides the land east of the line of the commons of St. Louis, assigning to Walker, the land north of such line, and to Papin the land south of such line; and if they further find that such division line was reported by said surveyor to both of said parties, and a plat thereof furnished to both of them; and if the jury further find from the evidence, that both parties acquiesced in the said line, and that Joseph Papin subsequently laid out the por-

tion of land thus assigned to him into lots and streets, as an addition to the city of St. Louis, and filed a plat of such addition in the recorder's office of St. Louis county, acknowledged, as is shown by the copy given in evidence, that such addition has for its northern line, the line established as division line, as aforesaid; and if they further find that the said Papin sold, and conveyed to the said Walker two lots of ground in the said addition, and that the call in his said deed for said lots, for the northern boundary of said lots, is for the land of said lots, is for the land of said Walker, and that such lots when laid out and surveyed, were laid out and surveyed with the division line as run by Jacob Smith, as their northern boundary, and if the jury shall further find that the defendants have never been in possession of any land south of such division line; and if they shall further find that at the time of the conveyance from said Papin to the said plaintiffs, Walker, and those claiming under him were in possession according to the division line as established by said Smith, then the plaintiffs are not entitled to recover.

A verdict was found for defendants and plaintiffs brought error.

### HAIGHT, for appellants.

I. The location of the premises under the deeds in evidence, is free from doubt or ambiguity. Thirteen and sixty-five hundredths acres is to be taken from the northern end of the tract, included in the patent, by a line parallel to the north line of the land included in the patent.

II. If there is any doubt whether the deeds given to the landlord of the defendants, Isaac Walker, the said quantity mentioned in the first point, or one half of the patented tract, the doubt is one of legal construction, arising on the face of the deeds, and not one as to location in fact, and in any event makes no difference. Setting off one half by a line parallel to the north line of the land, embraced in the patent, will come to nearly the same result. No agreement or acquiescence is claimed or can be on this question.

The defence is, that Papin, under whom plaintiffs claim, assented to a survey, excluding that within the commons from such survey, and laying off the northern half by a line parallel to the north line, and extending this line so far south as to make up for that portion *really* conveyed, to which it was supposed the title might be defective. This is sought to be done by acquiescence, as a distinct fact, or as evidence of an agreement, resting in parol to that effect.

III. Then upon the true legal construction of the deeds, there can be no doubt as to the true location, in fact, of the premises conveyed. The owner cannot be barred of his right to the land, except by some agreement, or deed in writing, or by an adverse possession for a sufficient length of time to bar an ejectment: Rockwell vs. Adams, 16 Wend., 285; cases reviewed in the able opinion of Senator Maison.

It is unnecessary to refer to any authority; an examination of this suggests the principles which must be decisive of this class of cases.

1. Where the true line is doubtful, or uncertain, as a question of fact, then the acquiescence, or parol argument of the parties furnishes the best and safest guides to establish the truth. They are not evidence of any newly acquired rights, but they are evidence, and should be deemed conclusive as to what the truth of the matter is, especially after a long time; and when the evidence of the locations has to a great extent disappeared.

2. It is equally clear, that to set up a practical location, by the acquiescence, assent, or verbal agreement, express or implied of the parties to deprive one of his land, when there can be no real doubt as to his rights, is doing away by judicial legislation, with at least two benign and wise statutes, viz: Limitations, and the statute of frauds.

In this case, it is claimed, that the grantor of the plaintiffs, by the facts in evidence, gave or the lessor of the defendants three ninety-one hundredths acres, to make up for that part within the commons really conveyed. This is the substance, and effect; and no ingenuity can disguise the real nature [of the case. All the cases about the settlement of doubtful

Taylor & Meson vs. John & Jacob Zepp.

line, acquiesence, &c., have no application, unless it is designed to say land may be conveyed otherwise than the law has prescribed.

IV. Neither Papin nor the plaintiffs are estopped from claiming the land in question, either by deed, or by matter *in pais*.

1. As to the deed to Walker for the lots in Papin's addition. "bounded north by I:ca: Walker's;" this is mere matter of description: and it is conceded, that what is contained in a deed as matter of description merely, and not as part of the substance of the grant, or consideration, does not operate by way of estoppel. For this, however, the court are referred to the following authorities: 12 Vt. Rcp., 39; Yelveston's Rcp., 227, n. (1;) Vin. Abr. Estoppel, 2; Rainsfords vs. Smith, 2 Dyer's Rep., 196 (a,) 1 Strange Rep., 610; Greenl. on Ev. vol. 1 sec. 26, 33.

2 Is there are any estoppel in the case by matter *in pais*? See Degell vs. Odell, 3 Hill, 215, and apply the following rule to this case:

"When a party, either by his declaration or conduct, has induced a third person to act in a particular manner, he will not afterwards be permitted to deny the truth of the admission, if the consequence would be to work an injury to such third person, or one claiming under him." It is also said "great caution should, however, be observed in the application of this rule; before a party is held to be thus concluded, it must appear:

1. That he has made an admission which is already inconsistent with the evidence he proposes to give.

2. That the other party has acted upon the admission, and;

3. That the latter will be injured by allowing the truth of the admission to be disproved."

This is not only a defect of evidence, but there is positively no evidence to make out such a case. Walker's purchase of the lots, for any thing that appears, may have been a profitable investment. See Jackson vs. Woodruff, 1 Cowen 276.

The counsel say; that somehow, the plaintiffs should be barred by the facts recited in defendants' instruction, and if the plaintiffs are to fail, their counsel will effect to have some reason given for it, which shall be recognized and approved by known legal principles. He respectfully objects to a judgment incapable of analysis, or of being founded upon, or tested by, the ordinary rules of legal logic.

GAMBLE, BATES, SPALDING and SHEPLEY, for respondents.

SPALDING & SHEPLEY,

I. The instruction, given for defendant by the court, was legal. It proceeds upon the ground, that if the whole tract was owned by Papin and Walker, Papin owning the south part, and Walker the nothern, and the boundary line being unsettled; and a matter of doubt where it would lie; and they referred it to the surveyor to run the division line for them; and he did so, and made plats thereof, and gave one to each: and they acquiesced in said line thus established, and possessed accordingly; and if Papin made his part up to said division line, or addition to the city laid out in blocks and lots, and filed a plat of the same according to law in the recorder's office; and if also, he, by his deeds to Walker, conveyed to him two lots in said addition, calling for Walker as a boundary, on the north, said lots being bounded north by said division line, and all this was done before the plaintiffs took their deed from Papin, and while Walker was in possession of all north of said line, that then, the conclusion of law is, that Papin cannot dispute said line, nor those claiming under him in priority of estate.

This position is fully borne out by numerous decisions.

6 Wend. 467—acts and declarations of parties may control the lines of their lands.

1 Yerger 116—where dividing lines are uncertain, parties may by parol establish the boundary, and such agreement is as effectual as a deed, p. 118, 119.

Taylor & Mason vs. John & Jacob Zepp.

1 Yerger, 496—if owners establish the boundary line in reasonable conformity to calls, they are estopped by it.

7 Yerger 455, at p. 458—where true locality, and doubtful acts of the parties establishing it, and possessing it accordingly, bind, they cannot abandon such line.

8 Yerger 398—where there is doubt about a boundary, claimants can fix it by verbal agreement, p. 407, 408.

4 Yerger 455—where there is doubt as to true locality, a verbal agreement, and acts done under it, are evidences of true boundary.

1 Meiys 413, 419—a survey by proprietors, to establish the true line where it is doubtful, concludes them upon principles of public policy, and for the security and repose of men.

9 N. H., 473—the owners of adjoining lands may agree by parol to establish the boundaries, and such agreement is conclusive, p. 475-6-7.

4 Barr 234—where parties, for the purpose of settling a disputed boundary, agree on a tree, courts will hold them to it.

6 N. H. 107—a division line run by surveyor, by agreement of the owners of the adjacent lands is conclusive.

4 John., 202—parol partition between tenants in common, followed by possession, is binding.

14 Wend. 619—same principle.

4 John. 140—at p. 143, court say, "it is however, not to be contracted, that parties, whose rights to real property may be perfect, and the boundaries of which be susceptible of certain and precise ascertainment, may by their acts conclude themselves, by establishing other and different boundaries."

7 John , 240—parties were held bound by their actual location of lands and acts of recognizance.

11 John. 123—parties agreed on their division line and acquiesced in the same for years, held, it could not be disturbed.

4 Metcalf, 448, pages 452, 457—where line left ambiguous or uncertain, acts of parties may determine it.

2 Caine's 198—Judge Spencer says, p. 199, "an agreement by parol to the settlement of a line, appears to be effectual, and not liable to any objections on the score of the statute of frauds and perjuries." Judge Thompson, at p. 200, says, "it is immaterial in what manner this line was ascertained, whether by a joint submission to one or more surveyors, or by an exparte survey; it is enough that Black, after it was ascertained, recognized it as the true line. This would preclude him from denying the plaintiff's right, and must also have the same effect as repects the claims of the defendant who holds under Black."

4 Wheat , 513—agreement of parties, establishing their division line, by a survey, and holding accordingly, and conveying parcels of land regarding such line, is binding.

1 Binney 215—a line established by agreement between adjacent proprietors is, if followed by actual possession, binding.

12 Wend. 127—"there can be no doubt, that an express parol agreement to settle a disputed or unsettled line, is valid, if executed immediately and possession accompanying, and follows such agreement," and it is by estoppel.

7 Coven 761—an express agreement, fixing a boundary line is binding; and long acquiescence is evidence of such agreement.

10 Wend., 104 at p. 109—court say, "that where parties agree upon a division line, either expressly or by long acquiescene, such line shall not be disturbed."

13 Wend. 536, p. 539, decided that an agreement to a location established its line; and that long acquiescence was evidence of such agreement.

II. The evidence shows a case of estoppel by the deeds of Papin to Walker, which deeds adopt the addition made by Papin to St. Louis, and the said line of division run by Smith as he northern boundary thereof.

3 Mass. R., 529, Lajoye vs. Primm, estopped by statement of boundary.

Taylor & Mason vs. John & Jacob Zepp.

9 Mis. R., 156—Dickson vs. Anderson et al; 9 John. 92, was a recital of a previous patent.

4 Peters, 83, 84; &c., discusses the matter generally and the authorities.

All the facts make out a complete estoppel in pais. 2 N. H., 167; 6 N. H., 521; 11 N. H., 201; 12 N. H., 132; 5 Watts, 284; 7 Watts, 163, 394; 5 Serg. and Rawle, 267; 5 Watts and Serg. 284; 8 Shepley, 130; 2 Metcalf, 423; 4 John., 140; No. 42 L. Lib., (2 Smith's Lead. cases, American note, 458, "estoppel in pais."

III. The plaintiffs below, holding under Papin, are subject to all estoppels that bind him, being in the priority of estate with him.

The general rule is, that all estoppels bind parties and privies in blood in estate and in law. This needs no citation of authority. Even a judgment runs with the land. 5 Denio 296. This was estoppel of judgment, on plea of libeum renementum, and held to run with land so as to bind privies. 4 Peters 85–86.

IV. The true construction of the deed of Papin to Walker, is, that one half of the patented tract, was conveyed thereby. The quantity is only matter of description; and intent is apparent to convey one half the deed so stating, and as the quantity stated is just one half of the quantity stated in the patent to Papin. The deed of Papin to Deaver, and the deed from Deaver to Walker, both call the quantity conveyed by the one half of the patented tract.

The lease of Adams vs. Rockwell, cited by Mr. Haight, is not to the effect represented by him. See the head notes of it, and see Chancellor's opinion, p. 302, where he assents to the doctrine that agreement of parties will establish a division line.

The case was merely acquiescence as to wild land.

### Gamble & Bates.

I. The deed from Joseph Papin to Larkin Deaver, does not fix the shape of the land conveyed, nor the boundary that is to separate it from the land retained by Papin.

II. It was competent for Papin and Walker (who had purchased from Deaver) to agree upon the line that was to divide the land of Walker from that of Papin, and to fix it by their acts according to such agreement, and when fixed, the line so established could not afterwards be disturbed. 6 Wend. 467; 1 Yerger 116; 4 Wheat. 513; 9 N. H. 473; 7 Cowen 762; 13 Wend. 537.

III. The acts of Papin, in laying out his addition and acknowledging and recording the plat which called for Walker's land as the northern boundary of the addition, and showing a street partly along the line of Walker's, and in selling lots to Walker according to that plat calling in the deed for his land as their north boundary, estop Papin and those claiming under him from disputing the line so established. Rev. Code, 551, act concerning town plats; 2 Smith's Leading Cases, 607, 511, in note; 9 Mo. R. 156, Dickenson vs. Anderson & Thomson.

Napton, J., delivered the opinion of the court.

The only question in this case is whether the instruction of the court of common pleas is correct.

Upon the face of the deeds the intention is manifest to convey to Deaver one half of the patented tract. The deed from Papin to Deaver conveys a tract " containing 13 64-100 acres, and being the northern part of a tract of land containing 27 29-100 acres." In the covenants

of the same deeds, the tract conveyed is mentioned as being the "northern part or half of the patented tract." It seems that this patent to Papin, though calling for 27 29-100 acres, actually contained by survey 31 92-100 acres, but a portion in the northern end, a little over two acres, was covered by the St. Louis commons. By direction of both Papin and Walker, (who had bought of Deaver) a surveyor divided the tract between them, and established a division line, giving to each 14 53-100 acres, leaving out, of course, the part of the patent which fell within the commons. Copies of this survey were furnished each party, and possession given accordingly. Papin caused his portion of the land to be laid out in town lots, a plat of which he had filed in the clerk's office, as the law directs, and upon which plat Walker's name was marked immediately north of the division line run by the surveyor, as indicating the land beyond that line to belong to Walker. Subsequently he sold to Walker two lots, forming a gore between Carondalet avenue and Walker's land, and to that extent diminishing *Walker's front on the avenue*. This survey was made in 1842.

These facts, in our opinion, make out a case of estoppel. To constitute an *estoppel in padis* it is said in Darrell vs. Odell (3 Hill 219) that there must be, First, An admission inconsistent with the evidence proposed to be given, or the claim offered to be set up; Second, An action by the other party upon such admission; Third, An injury to him by allowing the admission to be disproved. Here we have a concurrence of all the circumstances thus said to be necessary to constitute an estoppel.

1. The act of the surveyor in establishing the division line, was the act of Papin; it was directed by him and sanctioned after completion. It was recognized and acquiesced in. This line is now sought to be removed by those claiming under him, and a new line established.

2. Upon the faith of this survey Walker took possession and has held possession ever since without question. But this is not all—he was induced to purchase two lots, not included in his part of the tract, with the view of giving his tract a rectangular shape, and getting a full front on the avenue or public street.

3. The injury resulting to Walker from an allowance of this claim is sufficiently obvious, A glance at the plat of survey will show that the lot purchased by Walker could only be valuable to him upon the stability of the division line already agreed on. If the provision now proposed be made, these lots would form an *isolated wedge, disconnected* with Walker's main tract, and if not wholly useless, certainly greatly diminished in value.

Taylor & Mason vs. John & Jacob Zepp.

It is upon this doctrine of estoppel that the cases have rested, which hold the verbal argreements and acts of parties conclusive of a disputed boundary, without regard to the inference which the law would draw from the deeds, in the absence of such acts and agreements. The object of rules of construction is to arrive at the intention of the parties, but no rules can be framed which will lead to so correct a conclusion as the interpretation pointed out by the acts of the parties themselves. We may resort to these rules in the absence of such indications, but who so well qualified to understand their own meaning as the parties themselves? Let it be admitted, in this case, that a line parallel to the north line of the patent, at a distance sufficient to give the quantity called for, is the line which by construction of law would be the proper one to give shape to the tract; does it follow that no other line could be agreed upon between the parties, including even the quantity and answering all the definite calls of the deed? A tract of thirteen or fourteen acres, at the north end of a larger tract, may be located by shifting the north line of the smaller tract in a variety of directions, and the quantity called for and the position required still be reserved. No doubt a straight line, parallel to the northern line, is the usual, natural and proper line, in the absence of action by the parties themselves; but if caprice, or equity, or an honest fulfillment of obligations should prompt the parties to select a curve, or a diagonal, or any other line, I do not know of any rule of law or equity which compels the courts to interfere.

There might be some hesitation in applying this principle of estoppel to cases where parties had obviously acted under a mistaken impression of their rights. A careful examination of all the deeds and all the actions of the parties in this case will tend to the conclusion that there was in truth no mistake at all. Papin had all the facts fully before him when the line now disputed was assented to. The part of the patent within the commons was left out of the survey, and its omission was manifest upon inspection of the plat. The division was no doubt understood to be made without reference to that small portion of the original tract patented which fell within another confirmed claim. That this was the understanding of all parties is manifest from their acts, and is this circumstance to militate against the enforcement of a principle of law which happens thus to correspond with the dictators of justice and equity? We think not.

We do not understand the case of Adams vs. Rockwell (16 Wend. 285) in the court of errors of New York, as maintaing a different principle. It is not always easy to ascertain the exact grounds upon which a judgment is rendered by that court, when several opinions are deliv-

ered, varying somewhat in their views, but concurring in the result. In this case the Chancellor takes the following positions:

"Where there can be no real doubt as to how the premises should be located according to certain known boundaries described in the deed, to establish a practical location different therefrom which shall deprive the party claiming under the deed of his legal rights, there must be either a location which has been acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations in relation to real estate—or the erroneous line must have been agreed upon between the parties claiming the land on both sides thereof, or the party whose right is to be thus barred must have silently looked on and seen the other party doing acts or subjecting himself to expenses in relation to the land upon the opposite side of the line which would be an injury to him and which he could not have done if the line had not been so located, in which case perhaps a grant might be prevented within twenty years."

Admitting that the present is a case of known boundaries described in the deed, and that these boundaries conflict with the line practically established, there is evidence of acts from which an agreement of the parties may well be inferred, and if there was not the party whose legal rights are sought to be enforced "has silently looked on and seen the other party doing acts and subjecting himself to expenses in relation to the land upon the opposite side of the line which would be an injury to him and which he would not have done if the line had not been so located." But it will be observed that this is not a case of a boundary fixed in a deed by monuments, courses and distances. Moreover, the case of Adams vs. Rockwell was a case concerning wild lands, where an encroachment had been made by an adjoining proprietor, a line of division established and silently acquiesced in for several years, but no improvement made, and no occupation even of the land. The mere silent acquiescence of the true owner, resulting in no practical injury or inconvenience to the encroaching proprietor, was not regarded sufficient to raise the presumption of an agreed line. But it was admitted, although the case was one of known fixed boundaries, an erroneous line might have been agreed on, and such line should conclude the parties.

It is said that this doctrine conflicts with the statute of frauds—but it has not been so regarded in any of the numerous cases decided on this point. Where the terms of the deed are ambiguous, there is clearly no ground upon which the statute of frauds can be invoked; but even where a well defined boundary is given in the deed, we have seen that a different one may be established under circumstances which will conclude the parties from contesting it. This is only analogous to numer-

ous other doctrines, as well settled as the construction of the statute itself. Is not a title itself held to pass estoppel? Have not the courts refused to permit the contents of a deed to be proved, when the grantee has destroyed it with a view to re-invest the title? Have not owners of land transferred their title by standing by and permitting adverse possession, and the adverse proprietors to build and improve? The statute was made to prevent fraud, and the courts have not felt themselves called upon to adhere so closely to its letter as to facilitate and encourage the very evil it was framed to prevent.

The truth is, the statute does not apply to such cases. The doctrine of estoppel is as old as the statute of frauds, and, as such, a part of the law of the land. It is no objection to either, that the one may be a modification or regulation of the other.

There is much reason for holding in this case that there was an estoppel by deed, as well as by acts in *pais*, but as the latter terminates the controversy, it is unnecessary to give any opinion on this point.

Judgment affirmed.