50  429
f88  143

## J. W. TURNIPSEED v. W. H. HUDSON.

1. OFFICE — CONTEST FOR OFFICE OF CHANCERY CLERK — ESTOPPEL *in pais*. — To establish estoppel *in pais* there must be:

    1. An admission inconsistent with the evidence offered to be given, or the claim offered to be set up.

    2. Action by the other party upon such admission.

    3. Injury to him by allowing the claim to be disproved. 14 Mo., 482.

2. SAME — ABANDONMENT — SURRENDER. — T. was elected clerk of the chancery court of Winston county in 1871, for the term of four years. The act of April 21, 1873, provided for an election to fill said office in November, 1873 (afterwards decided to be unconstitutional); previous to which election H. and others became candidates for the office at said election. T. was also a candidate for reëlection. They entered into an agreement in writing, to abide the result of a primary election, to which their respective claims were to be submitted, and the successful party, to be supported by the defeated aspirants. At the primary election, H. was selected, and in November, 1873, he was elected to the office. In January, 1874, he qualified and took possession of the office, T. surrendering the same. Subsequently the election was decided to be void, and T. brought suit to recover the possession of the office. *Held*, that the surrender of the the office by T. did not amount to such an abandonment of the office as to amount to an estoppel *in pais*.

3. SAME — SAME. — In order to an estoppel by conduct, the following elements must be present:

    1. There must have been a *representation* or a *concealment* of material facts.

    2. The representation must have been made with *knowledge* of the fact.

    3. The party to whom it was made must have been *ignorant of the truth* of the matter.

    4. It must have been made with the *intention* that the other party should act upon it.

    5. The other party must have been *induced to act upon it*. If there is an estoppel, it cannot be by judgment or record, of adjudication nor by matter of deed, but must be by matter *in pais*, of which estoppel by conduct is the key. Bigelow on Estoppel, 473–480.

4. SAME — TRANSFER OF OFFICE FROM ONE TO ANOTHER — If an office may be transferred from one to another, in the mode attempted, no elucidation is necessary to expose the evils which might flow from repeated changes, which the sanction of the claim of the respondent, to the ex-

tent required, would render possible. 37 N. Y., 317; 4 N. Y., 449 ; 3 Kent's Com., 588, top p. 11 ed., part 6 (of officers).

5. SAME — VACANCY — HOW CREATED. — If a state or county officer is found to be an idiot, lunatic, or of unsound mind, or guilty of a felony or infamous crime, corruption or peculation in office, gambling with public money, he shall be removed from office. Rev. Code 1871, § 392. If any state, district or county officer shall remove out of the state, county or district for which he was elected, the office shall thereby become vacant. Rev. Code 1871, § 393. And the board of supervisors have the power to order elections to fill vacancies in county offices. Rev. Code 1871, § 1373.

6. SAME — CASE IN JUDGMENT. — In order to create a vacancy, the party holding the office must permanently disable himself from performing the duties of the office, by himself or deputy, or he must, by act or declaration, manifest a clear intention to willfully abandon the office and its duties.

7. OFFICE — ABANDONMENT THEREOF — ESTOPPEL — Where an officer abandons an office voluntarily, and another enters upon its duties under color of right, such a one is a *de facto* officer, and can only be ousted by the judgment of a court at the suit of the state. Such abandonment amounts to a resignation of the office, and the party is estopped from setting up any claim to the office. Alexander v. Walter, 8 Gill, 253; Colton v. Beardsley, 38 Barb., 45. Per SIMRALL, J.

ERROR to the Circuit Court of Winston County. Hon. J. A. ORR, Judge.

The facts of this case are very fully set out in the opinion of the court.

*W. L. Nugent,* for plaintiff in error :

The only question involved in this case is, did the agreement between the parties, accompanied by the voluntary surrender of the office in January, 1874, operate as an abandonment thereof, and estop the plaintiff in error from asserting his rights as the lawful clerk of Winston county ? The election law of April, 1873, has been pronounced unconstitutional by this court, and the defendant in error is not the clerk of said county. He has nothing but possession, and can only justify his possession upon the idea of a vacancy. An office not filled according to law is vacant, but when it has been duly filled and the party elected has been com-

missioned and qualified, and entered upon the discharge of its duties, as in this case, there can be no vacancy until the term of service expire, or the death, resignation or removal of the person appointed.   Johnston v. Wilson, 2 N. H., 202.   The statute defines the cases in which a vacancy in office exists, and none of them are applicable to the case at bar.   Certainly it would not be contended that the plaintiff in error, by the mere making of the agreement referred to in the pleas, resigned or vacated the office devolved upon him by his election in November, 1871, and his qualification in January, 1872.   I am willing to admit that any voluntary act on the part of an officer which *permanently disables* him to perform the duties of his office would amount to a *constructive resignation* by abandonment.   It was so held in State v. Allen, 21 Ind., 516, where the officer enlisted in the service of the United States as a volunteer.   But there could be no such thing as an abandonment in law of the office in this case.   State v. Baird, 47 Mo., 301.   The facts are that the plaintiff in error entered into the agreement upon the idea that the election of his apponent in November, 1873, was valid, and that the surrender to him was a duty he owed the public.   As soon as the question of the constitutionality of the act under which that election was held was decided he commenced proceedings to reclaim the office to which he was rightfully elected, and which, under a clear mistake he had surrendered.   More than this, the proof shows that the defendant in error, when let in possession, agreed that if the law referred to was pronounced invalid, he would restore the possession to the plaintiff in error.   To justify the idea of an *abandonment* there must have been a vacating of the office without any desire that any other person should acquire it.   Here there was a surrender upon an *express agreement* and with the *fixed* intention that the defendant in error should become the possessor.   The *bona fide* of the parties, who acted upon the idea that the law was constitutional, is apparent, and had the agreement been fairly carried out, there never would have been any necessity for this suit.

It is a familiar rule in the law of contracts, that, if, after knowledge of a supposed fraud, surprise or mistake, a person performs his agreement in part, he will be considered as having waived the objection, but I have never heard it contended that an officer duly elected, commissioned and qualified, and who has actually taken possession of his office, can waive his rights. He may renounce them by resignation, or removal from the county, but not waive them by any such acts as charged. An office is a right to exercise a public *function or employment* and cannot be made the subject of barter between individual claimants. The court below regarded the office in dispute simply in the light of private property. The public, and the rights of the public, were ignored, and questions of public policy disregarded. The office was created by the constitution for the public good, and the plaintiff was elected to fill it, was qualified and entered upon the discharge of the duties incident to it. He was, as to that office, a public agent or trustee, had no proprietory interest or private property in the office beyond its constitutional term and its fees and emoluments. State v. Dews, R. M. Charlton, 377; Smith v. New York, 37 N. Y., 318. If the defendant in error was let into possession upon any such agreement as is alleged in the pleas, unless explained as hereinbefore stated, both parties to the transaction would be liable as for an offense at common law, the agreement being absolutely void upon the plain principles of public policy. Gray v. Hook, 4 Comstock, 449; 3 Kent Com. sub page, 456.

Nor does the doctrine of *estoppel* apply. The question is not as to the fees received by the defendant in error prior to the demand made for a surrender of the office, according to the terms of the agreement, but as to the office itself. An attentive examination of the cases cited by adverse counsel, Wammack v. Holloway, 2 Ala. N. S., 31, and Colton v. Beardsley, 38 Barb., 34, will show that they have no application whatever to the present controversy.

*A. H. Handy*, for defendant in error, insisted :

1. That as to the individual and personal interests of relator in the profits of the office, he is clearly precluded from asserting them against the defendant in error, by his agreement and surrender of the office to him in pursuance of that agreement, and cited in support of this: 2 Story's Eq. Jur., §§ 1540, 1548; 2 Smith's Lead. Cases, 642 (ed. of 1855); 13 Wallace, 233 ; 8 Gill (Md.), 251.   And this principle applies to claims to a public office, even though there was, at the time of the relator's entering into the agreement or delivering up possession of the office, no vacancy in the office.   Regina v. Greene, 2 Queen's Bench, 460 ; Colton v. Beardsley, 38 Barb., 29.   Although the state would not be precluded from questioning the respondent's right to the office, in behalf of the public, the relator under the circumstances of this case, is estopped.

2. Respondent being elected at the regular election in November, 1873, and having given bond, which was approved by the board of supervisors, and having entered upon the duties of the office, is clerk *de facto.*

3. That relator, having voluntarily abdicated and surrendered the office has, in law, resigned.   No particular form of resignation being fixed or required by law.   Wall. C. C. Rep., 119.

4. That whether the agreement between the parties was illegal as against public policy, the relator who was a party to it cannot come into a court of justice and claim the benefit of the illegality. In such cases the rule applies *potior est conditio possidentis aut defendentis.*   Coulter v. Robertson, 14 S. & M., 28; Holman v. Johnson, Cowper, 343.

5. There must be a demand as the statute requires, made for the office before instituting proceedings.

*R. G. Rives*, on same side, filed an elaborate brief, making substantially the same points and relying upon the same authorities.

TARBELL, J., delivered the following opinion :

This is a contest to determine the right to the office of chancery clerk of Winston county. Turnipseed was elected to the office in 1871, for the full term of four years. Hudson was elected to the same office in November, 1873, under the act of April 21 of that year. The act referred to having been declared unconstitutional, and the election thereunder null and void, the right of Hudson rests upon the statements contained in his fifth plea to the information filed by Turnipseed. The material averments of that plea are these: That in accordance with an act of the legislature of the state of Mississippi, approved the 21st day of April, A. D. 1873, an election was duly ordered to be held in the county of Winston, on the first Tuesday after the first Monday in November, 1873, for the office of clerk of the chancery court of said county, and that prior to said election and while the said Turnipseed was in the possession of the office, he Turnipseed, Hudson and others became candidates for said office at said election, and in the month of August prior thereto, entered into an agreement with each other, in writing, by which each pledged his sacred honor to abide the decision of a primary election to be held on the second Tuesday in September, for the purpose of determining to which of said candidates the other should yield his vote, influence and support for the said office; that at the primary election Hudson was selected as the candidate, and thus became entitled by the agreement to the vote, influence and support of Turnipseed for the said office; that at the election in November, Turnipseed cast his vote for Hudson; that Hudson was declared duly elected by the proper authorities; that he took the oath of office and executed the bond required by law; that on the first Monday in January, 1874, Turnipseed voluntarily and of his own accord, without demand of Hudson, delivered to him the keys of the office, together with the books, papers, records and furniture belonging thereto; since which time Turnipseed has wholly neglected to perform the duties of the office; and that said duties have been discharged by Hudson, who has claimed to act in his

own right, with the full knowledge and consent of Turnipseed. Upon the judgment of this court pronouncing the act for the election of chancery clerks and others in 1873, unconstitutional and the election thereunder void, this proceeding was instituted. The testimony is quite voluminous, much of which is wholly immaterial. On the part of Turnipseed it was contended and positively stated in the evidence, that on surrendering the office to Hudson, he did so upon the understanding, mutually assented to, that his retirement was subject to the decision of the supreme court upon the statute under which Hudson was elected ; that is, if the law directing the election should be declared unconstitutional, then he, Turnipseed, would reclaim the office ; but that these declarations were made to Hudson and that they were acceded to by him, are as positively denied on his part, by himself and his witnesses. The circuit court held adversely to the relator on the law and the facts, whereupon the latter prosecuted a writ of error.

There were several pleas, replications and demurrers by both parties, which were acted upon by the court below. It is now sought to base error upon the action of that court in this regard, and it is urged that certain of the demurrers ought to have been extended to the information ; but the merits of this case are fully presented in the record ; they could not be more clearly exhibited upon another or any number of trials ; and no question of pleading or other technical point of any practical importance is conceived to be involved. On the contrary, the case is one, as is believed, calling for a decision on its merits.

The propriety of this course is confirmed, from the fact that estoppel *in pais* depends upon the evidence and not upon the pleadings. Herman on Est., 560 ; Bigelow do., 590, and cases cited in notes ; Alexander v. Walter, 8 Gill., 240, the latter being an action of ejectment, in which it was held that matter of estoppel *in pais* was the subject of evidence and not of plea.

It is considered, therefore, that the second cause assigned for error only need be discussed, viz: that "the court erred in decid-

ing the issue of law and fact for the defendant, and in dismissing the petition."

In view of the unconstitutionality of the act of April 21st, 1873, and of the illegality of the election thereunder, the respondent is without right or defense, unless: 1st. He can invoke the doctrine of estoppel; or 2d. Unless there is a vacancy in the office in dispute, caused by the acts of the relator, whereby he has forfeited his title thereto.

If there is an estoppel it cannot be by judgment or record of adjudication, nor by matter of deed; but must be by matter *in pais*, of which estoppel *by conduct* is the key (Bigelow on Est., 473). After a full discussion of the subject, this author says all of the following elements must be present in order to an estoppel by conduct:

1. There must have been a *representation* or a *concealment* of material facts.

2. The representation must have been made with *knowledge* of the facts.

3. The party to whom it was made must have been *ignorant of the truth* of the matter.

4. It must have been made with the *intention* that the other party should act upon it.

5. The other party must have been *induced to act upon it.* Ib., 480.

And in this summary all the authorities concur.

In the case at bar, there has been no *representation* or *concealment* on the part of the relator; there has been no *ignorance* on the part of the respondent; nor, has the latter been *induced* to act, to take any step, or to change his position or conduct in any respect whatever, in consequence of anything said or done, or withheld by the relator. On the contrary, both these parties were deluded or impelled by the act of the legislature ordering an election. The record discloses an active public sentiment in favor of a pledge on the part of the several candidates for the office of

chancery clerk to abide the vote of a primary or nominating election. To this sentiment the relator evidently yielded with reluctance. The signature of the relator to the pledge, however, had no influence whatever on the conduct of the respondent; for, in testifying on his own behalf he says, he preferred that the relator should not sign it, as that action by Turnipseed, in the opinion of Hudson, would have contributed to the success of the latter. He further testifies that he notified the relator that he was a "standing candidate" for the office in controversy, substantially, at every opportunity and on all occasions, until he should succeed. Hudson and several of his friends were active and vigilant in their movements and operations to secure the position to him, uninfluenced by any word or act on the part of Turnipseed, as Hudson was a candidate whether Turnipseed did or did not subscribe to the pledge, which was evidently but a means to an end, and not the production or the suggestion of the relator. Hudson testifies in the most positive language, that he had no understanding or agreement whatever with Turnipseed beyond that contained in the pledge subscribed by all the candidates. That pledge, like all others of the kind, was a part of the political canvass, intended to work out for some one of those subscribing it, induction to an office. It was a part of the complication of party politics by which a certain result was designed; an operation of doubtful policy, as its effect can only be to limit and restrict the choice of the people at the polls. It narrows their choice by political management to a single candidate, whereas in our form of government it is desirable that candidacy should be as untrammeled and as free as our institutions. Independently of this view, however, the pledge in this case, according to the testimony of the respondent, had no influence on his action, one way or the other, and this is utterly fatal to the theory of an estoppel. On this point all the authorities cited by counsel, and all others accessible, have been carefully examined. Alexander v. Walter, 8 Gill., 239; 2 Story's Eq. Jur., § 1546; and others.

The doctrine under discussion is stated with rare terseness in Dezell v. Odell, 3 Hill, 215. Goods were seized under an execution and delivered to the defendant, upon his receipt, stipulating to redeliver them to the officer. The receipt was ruled to be an estoppel in an action by the officer against the receiptor. The court say: " We have the clear case of an admission by the defendant, intended to influence the conduct of the man with whom he was dealing, and actually leading him into a line of conduct which must be prejudicial to his interests, unless the defendant be cut off from the power of retraction. This is the very difinition of an estoppel *in pais.* For the prevention of fraud, the law holds the admission to be conclusive."

And the doctrine is also briefly and accurately stated in Taylor v. Zepp, 14 Mo., 482. To establish estoppel *in pais,* the court say there must be: 1. An admission inconsistent with the evidence offered to be given, or the claim offered to be set up. 2. Action by the other party upon such admission. 3. Injury to him by allowing the claim to be disproved.

For the purpose of testing the case before this court, the respondent's statement of it may be accepted as embracing the case presented for adjudication. According to his own testimony in the cause, there was no admission, statement or act by the relator which was intended to or which did in fact influence his conduct. They were not dealing together, but were acting independently, if we accept the case made by the latter. Hence, there was no fraud, at least, on the part of the relator towards the respondent, for the latter was not governed in his line of conduct or influenced by any act of the former. On the contrary, taking the whole record together, it is palpable that the relator, rather than the respondent, was led into a line of conduct prejudicial to his interests by the act of the legislature and by the manipulations of active partizans. Within all the authorities — Bigelow on Est., ch. 19 ; Herman's L. of Est., sec. 442 ; ib., ch. 12, and cases cited by these authors; also, cases cited in Phillips v. Cooper, MSS. opin-

ion, present term — the pledge and the surrender are open to denial and explanation, and the case is without a single element of estoppel.

It has been urged that it is ungracious in the relator to seek to evade the pledge. With reference to this fact, it has been observed that, in limiting the number of candidates to be voted for at the regular election, it had served its purpose. It may be further remarked that, if the case made by the respondent be alone accepted, the attempt to interpose the pledge to defeat the relator comes with an ill grace from the former, whose conduct, he testifies, was wholly independent of the course of the relator. But it is on the ground of public policy that the acts of the relator, set forth in the record, shall not be allowed to change the tenure of an important public office, and not upon any ground between the parties. Holman v. Johnson, Cowper, 343.

There is another view of this pledge quite as conclusive against the theory of the respondent, as the suggestions already made, viz : that it is contract or promise of future action, and not a "representation," such as enters into or constitutes an element in the law of estoppel. At most, it is but the expression of a present intention, which the party is at liberty to change. If an action on this agreement were instituted by Hudson for the recovery of damages for nonperformance, the obstacles and result may be anticipated without suggestion. Bigelow on Est., 481 ; Langdon v. Doud, 10 Allen, 433 ; Howard v. Hudson, 2 El. & B., 1 ; Audenried v. Bitteby, 5 Allen, 382 ; Plumer v. Lord, 9 ib., 455 ; Jorden v. Money, 5 H. L. Cas., 185 ; White v. Walker, 31 Ill., 422 ; Harris v. Brooks, 21 Pick., 195.

Reference is made to Colton v. Beardsley, as stated in Bigelow on Estoppel. As therein presented, p. 522, that case is almost conclusive of the theory of respondent, but its examination in the reports, 38 N. Y., 29, shows it to possess no feature like the case at bar. The action was trover against school trustees for the taking and conversion of certain property. The plaintiff, to prove

his case, gave in evidence two warrants for the collection of taxes for school purposes, issued by the defendants, under which the collector seized and sold the property of plaintiff. On cross-examination the defendants asked the plaintiff's first witness if, at the several dates of the warrants, they were not acting trustees. The question was objected to, on the ground that the defendants could not show themselves trustees by reputation, or by proving their own acts. The objection was sustained, when the defendants presented the records of the school district, upon the face of which the question arose whether Colton instead of Beardsley, was not a member of the board of trustees. Colton was elected trustee in 1854, for the term of three years. Prior to the expiration of this time, and in 1857, Beardsley was elected in place of Colton, on the ground of a vacancy, by the neglect or refusal of the latter to serve. He had never signified his acceptance, nor discharged the duties of the office; was present at the meeting of the inhabants of the district, when Beardsley was elected in his place, as in case of a vacancy; and knew that B. entered upon the duties of the office, without interposing any objection or claim in his own behalf. The statute of N. Y., bearing upon the case, declares that a vacany in the office of trustee may be occasioned by death, *refusal to serve*, removal, etc. The evidence to show that Colton was trustee was sinply his election and residence in the district. It was not pretended that he accepted or served. Hence a vacancy within the letter of the statute. The case was decided by three of the four judges composing the court, and opinions by each of the three, two concurring in the judgment rendered, and the third dissenting. The points of concurrence between the two concurring judges it is not altogether easy to determine, but it is believed that the only essential point of agreement is in this, that the trustees had made out a *prima facie* defense, which required proof to overcome. They had offered to establish their official character by reputation, and acts, as such, extending through a period of several months. This evidence was rejected, and on

this ground the judgment of the circuit court, wherein the plaintiff recovered, was reversed and a new trial awarded. The dissenting judge was of the opinion that the trustees should show themselves such *de jure*, which he insists was the only question for determination. With reference to the doctrine of estoppel, one of the two judges on whose concurrence the rulings on the trial were reversed, makes these remarks only: "Again, were it necessary, the plaintiff should be held estopped from denying the defendant's title to the office. He was present at their election, remained silent when the office was being filled, as vacant, made no objection when it was filled, and without objection saw the defendants enter upon the duties and assume the responsibilities in said office, himself neglecting to act in his, now claimed, official character."

The other concurring judge merely says: "It is unnecessary to inquire whether his acts do not amount to an estoppel, to his alleging that his office was not then vacant; although my impression is that it should have that effect."

That was an election under a valid and subsisting statute, which declares a vacancy upon a refusal to serve, in which case the remaining trustees can convene the inhabitants, who, when assembled, are empowered to fill vacancies. In that case, the person first elected, after wholly neglecting to accept the office or to discharge its duties, attended the meeting, when his place was filled, as in case of vacancy, he, remaining silent, and without objection, saw his successor qualify and enter upon the duties of the office, which were performed by the latter for several months, and until the plaintiff's property was seized and sold for taxes, before any question was raised as to the legality of the second election. Colton then sought to contest the right to the office in the action which he instituted for the cause already stated. This was held by the concurring judges an attempt to attack title to an office in a collateral proceeding, which they also agreed could not be done. Upon this point the same dissenting judge was of the opinion that title to the office was directly in issue, and to justify, the defendants

must show themselves trustees *de jure.* The majority held they had shown themselves *prima facie* trustees *de jure.*

It may be repeated that there was no evidence offered to show that Colton ever accepted or served; there was evidence of his refusal to serve within the statute creating a vacancy; no proof was offered to show that Beardsley was not elected to an actual vacancy; there was only proof of Colton's election nearly three years prior to the election of Beardsley to his place, as in case of vacancy, and his residence in the district; there was an election to fill his place as in case of vacancy by his refusal to serve; he was present at the meeting, unobjecting; permitted his successor to qualify and assume the office; and only objected several months thereafter, when his property was seized and sold by the school district tax-collector, under warrants signed by the several trustees, including the trustee chosen as his successor. The circuit court ruled that, *prima facie,* there was no vacancy, and that the trustees must show they were such *de jure.*

The appellate court held that, *prima facie,* there was a vacancy, and that, *prima facie,* also, Beardsley was trustee, and further, that official character may be established, *prima facie,* by oath and reputation, upon which grounds, the judgment of the circuit court was reversed.

Two points of concurrence in that case may be added by way of further showing its clear contrast with the case at bar. 1. It was held that, under the statutes of New York, regulating affairs of school districts, the trustees and the inhabitants, when convened in school district meeting, were invested with power, in their judgment and discretion, to determine whether there was a vacancy, as in that case, and, that said determination was final until reversed or set aside by a direct proceeding for that purpose. 2. That a refusal to serve, whereby, under their statute, a vacancy was created, was clearly shown; that the inhabitants of the district so understood and acted upon it, and that the plaintiff's presence at the filling of the vacancy, and subsequent conduct, approved their understanding and ratified their acts.

Thus much time and space have been given to the case of Colton v. Beardsley, because of the very erroneous impression conveyed by the statement of it in Bigelow on Estoppel, with a view to show its want of analogy to the case at bar.

Another case cited by counsel (Regina v. Green) ought, perhaps, to be briefly noticed.    Search has been made in the report, but it can be found only as given in Bigelow, 565, and Herman, 535.  That was a motion for a *quo warranto* against the defendant for exercising the office of councillor when disqualified by the statute. His election was under a valid and subsisting law.    The relator was well acquainted with the intention of the defendant to become a candidate; he was present when the defendant was elected and acquiesced in his election; the election was declared and published; no notice of the disqualification was given at the time of the election or publication ; in fact, the relator was chairman of the meeting at which the defendant was appointed to office, and administered to him the oath of office or declaration required by law.    The court very properly held, as far as can be judged from the statement of the case by Mr. Bigelow, that the relator could not be heard to question the right of the defendant.    The court make the significant suggestion of a distinction between a judicial and a ministerial act in the induction of another into office. The relator, in administering the declaration to the defendant, by which the latter was inducted into office, acted judicially, whereas, if he had acted ministerially, the court say, the case would have been otherwise decided.

Mr. Herman, in his work on the law of estoppel, gives three or four lines to the foregoing case only.    According to this author, the defendant was " induced " to take the office and was inducted into it by the relator, who, in so doing, acted in his official and judicial character.    As referred to by these text writers, therefore, the case is not analagous to the one under consideration.

Another branch of the case before this court will now be discussed.

It is correctly urged, that the relator must recover, if at all, upon the strength of his own title, and not upon the weakness of the claim of his adversary.   Kimball v. Alcorn, 45 Miss., 151.

And, in this connection, it is insisted, that the pledge and the surrender were equivalent to a resignation, or an abandonment of the office. It is apparent, from the authorities, that, had the board of supervisors of Winston county found, in fact, a vacancy upon a hearing, after notice to the relator; had the board, thereupon, ordered an election to fill the vacancy; if such election had been held; had the person, thus elected, qualified and assumed the duties of the office, Turnipseed permitting all this to be done without objection or the interposition of any claim; and, were this contest between him and the person thus holding the office, quite another and different case would have been presented for adjudication.   Such a case would have borne a very strong similarity to that of Colton v. Beardsly, otherwise, wholly unlike the one one at bar.

As to the pledge signed by the several candidates, it must be held to have very little if any weight in the disposition of the case.   It was but the machinery of a political party to bring about, in its own way, the nomination of a candidate for support at the regular election.   To this extent, it may, perhaps, be unobjectionable; but beyond this primary purpose, it ought not to have recognition.   Its introduction to control the right to an elective office is a use for which it was never designed.   At least, beyond this, it ought not to have legal countenance.   As a means of effecting the tenure of public offices, it must be regarded as impolitic.   If an office may be transferred from one to another in the mode attempted, no elucidation is necessary to expose the evils which might flow from repeated changes, which the sanction of the claim of the respondent, to the extent required, would render possible.   Butts v. Wood, 37 N. Y., 317; Gray v. Hook, 4 ib., 449; 3 Kent's Com., § 588, top p., 11th ed., part 6, sec. LII, "Of Offices," et seq.

Were the acts of Turnipseed, including the pledge and sur-
render, tantamount to a resignation? Did those acts create a
vacancy in the office in controversy? Was there in fact or in law
a vacancy?

The provisions of the code, bearing on these questions, are
these:

" § 292. If any state or county officer, shall be found, by in-
quest, to be an idiot, lunatic, or unsound in mind, during the
the period for which he is elected, or shall, during that time, be
found guilty of felony, or any infamous crime, corruption, or
peculation in office, or gambling with money which may have come
into his hands by virtue of his office, or shall be removed from
office by sentence of any court of competent jurisdiction, the
office held by such person shall be thereby vacated, and the
vacancy shall be supplied as by law directed."

" § 393. If any state, district, or county officer, shall remove
out of the state, district, or county, for which he was elected,
during the term of his office, such office shall thereby become
vacant, and the vacancy shall be supplied as by law directed." * *

If the code declares a vacancy in office for any other cause,
the section has been overlooked.

§ 1363, gives to the board of supervisors power, and it is made
their duty to "order elections to fill vacancies that may occur in
any of the offices of their respective counties."

In Johnston v. Wilson, 2 N. H., 202, a vacancy was held to be
created by neglect to take the oath of office, and an absolute re-
fusal to perform its duties, except upon terms indicated by the
officer and not acceded to by the proper authorities. The court,
however, say: "It must be obvious, also, that when once accept-
ed, no vacancy can be said to exist in the office, till the term of
service expire, or till the death, removal or resignation of the per-
son appointed." And the terms *resignation* and *nonacceptance* are
employed as synonymous, the court saying: "The term used to
express a vacancy was immaterial."

Cummings v. Clark, 15 Vt., 653, presented two questions: 1. Whether the refusal of a highway surveyor to execute a receipt for a tax bill, offered to him for collection by the selectmen, is *ipso facto* a vacating of the office. 2. Had the selectmen a judicial discretion in determining when they might make a new appointment?

To the first question the court reply: "Such refusal is, at most, the omission by such officer of a prescribed duty. The statute does not, in terms, visit any such consequence as that contended for, upon the act complained of. To give it that effect by construction, would be to adopt a principle which, in practice, would render it necessary to fill most offices many times over, before the legal time appointed for a new election by the people."

With reference to the second question, it is said: "The selectmen doubtless, to some extent, had a discretion in the matter; for instance, in selecting a suitable person to fill any vacancy which might occur. But we think a vacancy must have occurred, in order to give them any jurisdiction of the matter. This vacancy must have occurred in one of the modes pointed out in the statute; 'from nonacceptance, death, removal, insanity, or other disability.' Now it cannot be contended that the present case comes under any of the the terms used, unless it be the last, and it would seem to require argument to show that the omission complained of in this case, constitutes no disibility to perform the functions of the office, in ary such sense as that term is used in the statute. 'Other disability,' must import such like disability as had been before enumerated ; that is, such as wholly vacated the office and left it the same as if there had been no appointment. In the present case no such vacancy had occurred, and by consequence, the selectmen had no power to make an appointment, and their proceedings are irregular and void."

The rule stated in The People v. Carrique, 2 Hill, 97, quoting Angel & Ames on Corp. is, that a resignation by implication may take place by being appointed to and accepting a new office in-

compatible with the former one.   See also, 3 Burr., 1616, and 2 T. R., 87.

It was declared in Cornwell v. Allen, 21 Ind., 522, that a temporary disability to discharge the duties of the office, might not of itself, create a vacancy, but that a disability designed to continue for the whole term of office, must vacate the office.   In that case, the party enlisted in the army of the U. S. for 3 years, or during the late war.   Held, a vacancy was created, because the person by his enlistment, entered into an engagement to leave the county and state for three years, covering the full term of office.

The case of Kiel v. Baird, 47 Mo., 303, was this: K. was elected treasurer of the county of Cooper in 1868, for the term of two years; he duly qualified and assumed the duties of the office; thereafter an information was filed in the county court of that county, in which petition it was averred that K. had been unable to attend to the duties of his office for a period of fifty days; on which information the county court proceeded *ex parte* to inquire into the case, and as a result of such examination declared the office vacant; whereupon the court appointed B. to the office. The court say: " Where is the legal warrant for these proceedings?   We are referred to the statute, which provides as follows : ' In case of vacancy in the office of treasurer by death, resignation, removal or otherwise, it shall be duty of the county court of the proper county to fill such vacancy by appointment.'   This statute authorizes the county court to fill an existing vacancy, but confers upon the court no power to create the vacancy it is to supply.   The statute cited confers no jurisdiction upon the county court to act in the premises until a vacancy actually exists.   The pleadings show that there was no vacancy in the office at the time the court assumed to act.   The complaint of the county attorney is, that the relator occupied the office, but neglected its duties.   That is the substance of his averments."

While the constitution of Mississippi contemplates vacancies in office from various causes, it has been seen that the Code has

made provision for vacancies in county offices, only by inquest in certain cases, conviction of a felony or other crimes enumerated, or by sentence of removal by a competent court, § 392, and by removal from the county, § 393. Nevertheless, vacancies may otherwise happen, and when they " occur," the board of supervisors may order an election to fill such vacancy. § 1363.

Did a vacancy " occur " in the office in controversy by the acts of the relator ? Manifestly, the board of supervisors, as a matter of law, cannot, by adjudication, create a vacancy, though as a question of fact, that body may inquire whether one exists or not. In this case it is a question of law upon the facts, to be determined by a competent tribunal. Although he delivered the office to the respondent, the relator did not remove from the county, nor did he otherwise render himself disabled or disqualified permanently, to discharge the duties of the office. As in the cases cited, there is a clear and just distinction between a penalty for the neglect of official duty, and a penalty involving the vacation of an office. Spafford v. Hood, 6 Cow., 478. To hold that the relator has vacated the office involved, would be contrary to a correct public policy, and to punish him for possessing a law abiding disposition, as indicated first, in yielding to the decree of the legislature, then in signing the pledge, and finally in a voluntary surrender, which was at the end of his term, according to the statute that for the time being commanded his obedience.

The true rule in a case like the one before the court would seem to be, that in order to create a vacancy, the party must permanently disable himself from performing the duties of the office, either by himself or deputy, or he must, by acts and declarations, manifest a clear intention to willfully abandon the office and its duties — an intention not shown by the record.

Holding the order of the board of supervisors declaring a vacancy in the office in dispute, standing alone unacted upon, to be nugatory, this case is narrowed down to the single question, whether the delivery to the respondent was a resignation by im-

plication, so as to create a vacancy. No determination on the part of the relator to abandon the office, in any sense of that term, within the authorities, is manifest. On the contrary, he did not desire to vacate. It is apparent that he was deluded by the unwise and illegal statute, and by the complications of the canvass, before which, he, perhaps, too readily yielded, but that he willfully abandoned the office in any legal or proper sense of the term ; or from a determination to vacate it because he did not wish to hold it, is a proposition wholly inconsistent with the record, unwarranted by the precedents, and absolutely the reverse of the intention of the relator. In view of this discussion, the case at bar may be summed up in this : that both these parties acted under a delusion caused by what proved to be an illegal statute and a void election; that Hudson acted upon no representation, expressed or concealed, of Turnipseed, but upon the statute referred to ; and that the relator delivered the office to the respondent, not from a desire, purposely or willfully, to abandon the office and its duties, but in obedience to a law of the legislature, approved by the governor, and its enforcement threatened by the local district attorney. When the act which has caused this litigation was declared unconstitutional, the relator demanded of the respondent a restoration of the office to which, upon the record and the authorities as they are understood, he was legally and equitably entitled. It would not be a sound public policy to permit parties to treat an office as a "mere toy" for "amusement, subject to be taken up, laid down and taken up again at will."

Judgment of the circuit court reversed and judgment final here.


SIMRALL, J., delivered the following dissenting opinion :

Not being able to concur with the majority of the court, I present very briefly, as required by law, the reasons therefor. This is purely a controversy between the parties, to the property in the office, and as incident thereto, its emoluments. The proceeding instituted by Turnipseed had for its object the recovery of

the office held and enjoyed by Hudson. Principles may have fit application to this litigation, which would have no place if the state were proceeding to eject the incumbent as not having a legal right to the office.

The question is, whether Turnipseed can recover the office, and not whether Hudson is *de jure* invested with it. It may be true (as is conceded on all hands), that Hudson has no better right than a *de facto* incumbent, having entered under claim and color of right ; and it may be also true that the relator is not as against him, entitled to the office.

The view that I take of the case is, that Turnipseed abandoned the office and gave way to its occupancy by Hudson, who came in not as a usurper, but under color of right. No set form of resignation is necessary. If Turnipseed voluntarily retired from the office, and Hudson was admitted to it under the forms of law, though not rightfully inducted, then Hudson is strictly *de facto* clerk, and can only be ousted by the judgment of the court at the suit of the state.

It is a well established fact, that from and after the first of January, 1874, Turnipseed altogether ceased to discharge the functions and duties of the office ; that all the books, papers, records, the seal and other insignia of office, were laid down by him and formally taken up and used by Hudson.

Looking to the circumstances under which Turnipseed divested himself of the office, and Hudson entered upon it, and it is plain to my mind that the respective acts of the parties meant a vacation of the office on the one side, and its acceptance and occupancy on the other.

These are the prominent facts. It was doubtful whether a legal election for the particular office could be held in November, 1873. Both parties desired to become candidates for the office, and agreed with each other to submit their respective claims to the nomination to a primary meeting, whichever received the nomination the other to give him his support and vote. Hudson got the

nomination, became the candidate, and was elected, Turnipseed voting for him. On the first of January Hudson executed a bond, which was approved by the board of supervisors, took the oath prescribed by law, and actually entered into full possession of the office, with all its records and paraphernalia, with the acquiescence and consent of Turnipseed, and continued without let or dispute, to perform its functions, for about four months, when the relator made his claim. The conduct of Turnipseed, throughout, was voluntary, without duress or constraint. He retired from the office, under a mistake of law, or rather with the doubt still unsolved, under which he seems to have acted, but that does not detract from the freedom of his conduct, nor destroy the legal effect of a most orderly and deliberate abandonment or resignation of the office.

Hudson, upon his retirement, entered, under color of right, his certificate of election, his bond approved and oath of office. There is not an element of usurpation, but a fulfillment of every requisite laid down in the books to constitute him a *de facto* clerk.

Turnipseed agreed with Hudson that if the latter should receive the nomination, and be chosen at the November election, in which he would assist with his vote, then he, Turnipseed, would retire, and let Hudson take the office. Such an agreement, in a suit for its enforcement, or for its breach, would have amounted to nothing ; nor would Hudson's election have conferred a right, if Turnipseed had not *in fact* actually vacated the office, and Hudson had not become invested with it, under color of right as before stated.

The legal effect of the acts of Turnipseed was a voluntary abandonment or resignation. Before it actually occurred, he came under an agreement to do so contingently. The contingency happened — and thereupon, in the most open and notorious manner, he retired. He contributed to place Hudson in office. He delivered to him the property and seal. The board of supervisors approved his bond, and swore him in. The state has ac-

quiesced, by sufferance, and thereby ratifies and affirms his acts as valid. Turnipseed, in the most solemn form, has recognized Hudson as clerk; the county authorities; the state, by her acquiescence and sufferance; the public, who have interest in his acts; all, have recognized him. Nor has his right been challenged, by any person, except the relator, and that not until several months after unquestioned possession. It is too late now to repent, and reclaim what he had voluntarily given up.

This is not the case of a casual or temporary refusal to perform the duties of an office, but rather of a deliberate and public abandonment of it — which, in law, is a resignation. If Turnipseed has ceased to be the clerk, he has no right to contest the claims of the defendant, Hudson. In support of these views, I refer to Alexander v. Walter, 8 Gill, 253; Regina v. Green, cited in Bigelow on Estoppel, 565; Colton v. Beardsley, 38 Barb., 41, 51; Church v. City of Milwaukee, 31 Wis., 518, 519.

The authorities show, that the doctrines of estoppel, in proper circumstances, apply to the claimant of an office. Does not the principle and the reason of it, speaking through the facts of this case, preclude the relator from asserting a right to the office? A party is sometimes, not permitted to deny that which he has solemnly and deliberately adopted and received as true. Herman on Estoppel, § 9, p. 11.

It has been well said by Mr. Bigelow on Estoppel, 481: " At the present day, estoppel is never employed to exclude the truth; its whole effect is to preclude parties and those in privity with them from unsettling a matter which they have in solemn form admitted or adopted."

The circumstances of this case meet the several requisites of an estoppel *in pais*, defined by Mr. Bigelow, p. 600:

First. Turnipseed, by his agreement with Hudson, his participation in the election and voting for him, his withdrawal from the office, so that Hudson might qualify and take possession, has done acts which influenced Hudson, and utterly inconsistent with the claim he now sets up.

Second. Hudson has gone forward, and shaped his conduct by these acts of Turnipseed.

Third. Hudson will be injured, by allowing Turnipseed to deny all these acts and admissions, and assert his claim to the office.